[Crim. No. 33887. Second Dist., Div. Two. Nov. 6, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MATTHEWS, Defendant and Appellant.

Counsel

Wilbur F. Littlefield, Public Defender, and Laurence M. Sarnoff, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**FLEMING, J.**—Defendant Joseph Matthews was convicted in count VI of the premeditated murder of his girl friend Ernestine Easley with the special circumstance of an additional murder (Pen. Code, §§ 187, 190.2), and was convicted in other counts of the felony murder of his son, Joseph, Jr., (Pen. Code, §§ 187, 189), of the attempted murder with intentional infliction of great bodily injury of his daughter, Ernestina, (Pen. Code, §§ 187, 664, 12022.7), and of arson with intentional infliction of great bodily injury (Pen. Code, §§ 447a, 12022.7). Pursuant to the then provisions of Penal Code section 190.2, subdivision (c)(5), he was sentenced on count VI to life imprisonment without possibility of parole and was given concurrent sentences on the other counts. On appeal, he asserts the sentence of life imprisonment without possibility of parole was improper because he intended to kill only his girl friend and not his son.

Facts

Ernestine Easley resided with her mother, sisters, and two children, Ernestina and Joseph, Jr. About 5:30 p.m. on November 17, 1977, at the Easley residence defendant, the father of the two children, threatened to kill Ernestine and said he would rather see his children dead or with strangers than with her or her mother. After an argument that led to blows Ernestine left for school, from which she returned about 10 p.m. Defendant was still in the house. Shortly after midnight Ernestine's sister, Renetta, was awakened by noises from Ernestine's bedroom which sounded like argument. Renetta went to the locked bedroom door and asked what was wrong. She heard her sister say, "No, Joe don't,

you're going to start a fire," and then something hit the floor. Immediately thereafter flames shot out from beneath the bedroom door. Renetta ran outside, reached through the bedroom window, and grabbed Ernestina, who was lying on the bed next to the window. Renetta then yelled for Ernestine to find Joseph, Jr. Ernestine answered he was dead. Ultimately, the neighbor broke down the locked bedroom door and pulled Ernestine from the room. Another neightbor crawled through the bedroom window and found Joseph, Jr.'s body between the beds. Ernestine subsequently died in the hospital as a result of burns suffered in the fire.

About 12:30 or 1 a.m. an off-duty security guard and his friend driving in the vicinity of the Easley residence spotted defendant, who had escaped through a window, running down the street in his undergarments and calling for help. At defendant's request they drove him to the police station. On the way, defendant asked the men to kill him, explaining that God had sent him from Heaven to kill his family because they had treated him badly, and that he had in fact killed them in a fire. Because he had nothing to live for, he wanted to die.

At the police station defendant, having been advised of his rights and waived them, told an investigating officer he wanted to kill Ernestine because she treated him like dirt, but he had not intended to harm the children. In a shed outside the house he had found a two-gallon container of gasoline. He brought it into the bedroom, pouring it over Ernestine, and lit it. He doused Ernestine with gasoline because he was angry with her and wanted to teach her a lesson.

The court found that both homicides were murders of the first degree—Ernestine's because it was intentional, premeditated, and committed with malice aforethought, and Joseph, Jr.'s because it was committed in the perpetration of arson, a felony (Pen. Code, § 189). The court also found that defendant was present during the crime and intended to murder Ernestine. On the basis of these findings the court concluded the allegation of special circumstance was true, viz. that the defendant had been convicted in the proceeding of more than one offense of murder of the first or second degree, and therefore the penalty of life imprisonment without possibility of parole applied. (Former Pen. Code, § 190.2, subd. (c)(5).) The court sentenced defendant accordingly.

## DISCUSSION

■ On appeal, defendant asserts that the trial court erred in sentencing him under section 190.2, subdivision (c)(5), and he argues that life imprisonment *with* possibility of parole was the proper sentence. Specifically, defendant argues that a finding of special circumstance based on multiple murder convictions requires an intent to commit both homicides.

Former Penal Code section 190.2 (Stats. 1977, ch. 316, § 9, eff. Aug. 11, 1977, now superseded by voter initiative of Nov. 7, 1978), stated in pertinent part: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found, . . . to be true:

". . . . . . . . . . . . . .

"(c) The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists:

". . . . . . . . . . . . . .

"(5) The defendant has in this proceeding been convicted for more than one offense of murder of the first or second degree. . . ." Nothing in the language of this section requires that the additional murder referred to in subsection (5) be an intentional murder. To the contrary the subsection includes murder of the second degree, a crime in which specific intent to kill is not a necessary element. (*People v. Conley* (1966) 64 Cal.2d 310, 320 [49 Cal.Rptr. 815, 411 P.2d 911]; *People v. Goodman* (1970) 8 Cal.App.3d 705, 708-709 [87 Cal.Rptr. 665].)

Neither do we find persuasive defendant's contention that a comparison of the 1977 statute with the earlier special-circumstances statute compels the adoption of the statutory construction he seeks. The predecessor statute (Pen. Code, § 190.2, Stats. 1973, ch. 719, § 5) defined special circumstances in pertinent part: "190.2 . . . (b)  The defendant

personally committed the act which caused the death of the victim and any of the following additional circumstances exist:...'

"(4)  The defendant has in this or in any prior proceeding been convicted of more than one offense of murder of the first or second degree..." The only substantive change from the earlier section 190.2, subdivision (b)(4) in the later section 190.2, subdivision (c)(5) was the addition of the requirement that *one* of the murders be committed with intent to cause death. At bench, the court made such a finding in its determination that defendant intended to kill Ernestine and that her killing was murder in the first degree. We hold that the presence of special circumstances under section 190.2 was correctly found.

We note one other aspect of the cause. At first glance it might appear that life imprisonment without possibility of parole for multiple murders arising out of a crime of passion is an excessive and disproportionate sentence for the offenses committed. Yet such a surface evaluation fails to take into account the comprehensive legislative scheme in the Penal Code for punishment of murder. What the Legislature has done with respect to the penalty of life imprisonment for murder (apart from the death penalty, with which we are not here concerned) is to divide the punishment of life imprisonment into lesser and greater categories. Persons in the lesser category of life imprisonment become eligible for parole by the Community Release Board at the end of seven years (Pen. Code, § 3046), while persons in the greater category, which consists of those heinous murders specified in Penal Code section 190.2 as involving special circumstances, remain ineligible for parole. This does not mean, however, that persons in this latter category will remain in prison for the rest of their lives. ■ The Constitution and related legislative enactments provide a mechanism for the release of prisoners serving life imprisonment without possibility of parole. Such mechanism consists of the Governor's power under article V, section 8 of the Constitution to grant pardons and commutations of sentence to convicted prisoners, a power which extends to those sentenced to life imprisonment without parole. (Cf. *Green v. Gordon* (1952) 39 Cal.2d 230 [246 P.2d 48]; *In re Collie* (1952) 38 Cal.2d 396 [240 P.2d 275].) Further, the legislature has established procedures in Penal Code sections 4800 to 4814 which authorize the Community Release Board to recommend to the Governor the names of prisoners for commutation of sentence or pardon in instances it believes the Governor should exercise his powers. Thus, while routine parole by the Communi-

ty Release Board is not available to a life prisoner convicted of multiple or other special-circumstance murders, commutation of sentence by the Governor on the recommendation of that same Community Release Board normally remains available. The difference between the two methods of release is that release of those sentenced to life imprisonment under special circumstances requires the approval of both the Community Release Board and the Governor, while release of other life prisoners may be effected by the Community Release Board alone. It may be seen that the sentence at bench of life imprisonment without possibility of parole creates no insurmountable barrier against mitigation of the sentence if the time should come when the sentence appears to have served its purpose.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 3, 1980.