[Crim. No. 21362. First Dist., Div. Three. Dec. 14, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH LYNN MOORE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Parts I, II, III, IV, VII, VIII, IX, X, and XI are not certified for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Thomas W. Perley, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward P. O'Brien, Assistant Attorney General, and Blair W. Hoffman, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SCOTT, Acting P. J.—In March 1980, appellant Kenneth Moore and his brother David Moore were convicted by a jury of two counts of first degree murder, each with two special circumstances (Pen. Code, §§ 187, 190.2, subds. (c)(3) and (c)(5)), twenty-three counts of robbery (Pen. Code, § 211), six counts of burglary (Pen. Code, § 459), five counts of rape (Pen. Code, § 261), three counts of sodomy (Pen. Code, § 286), one count of oral copulation (Pen. Code, § 288a), seven counts of false imprisonment (Pen. Code, § 236), two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), two counts of auto theft (Veh. Code, § 10851), six counts of injuring a telephone line (Pen. Code, § 591), and one count of firing into an inhabited dwelling house (Pen. Code, § 246).

At the conclusion of the penalty phase, David Moore received the death penalty. The jury could not reach a penalty verdict as to appellant Kenneth Moore, and the court fixed the penalty at life without possibility of parole.

### The Offenses

The crimes all occurred during the summer of 1978. Appellant does not dispute the sufficiency of the evidence to support his numerous convictions of the substantive offenses,[1] and we will not recite the evidence in detail, except where necessary during discussion of particular issues. The crimes will be briefly summarized, in chronological order.

a. *August 4: Carter/Jensen robberies*

Gerald Carter and Jeannie Jensen were robbed in their Oakland home by appellant, his brother, and a third man. David had a handgun; appellant carried a double-barreled shotgun. The men told their victims that they had killed before, and that it would not bother them to kill the victims if they did not cooperate. A third victim, a woman who was passing by, was also robbed during this incident.

---

[1]As will be discussed, appellant does contend that the evidence is insufficient to support the special circumstances findings.

Crimes: one burglary, three robberies, one count of injuring a telephone line.

b. *August 5: Stevens robberies*

Peter and Eileen Stevens were robbed in a motel room in Hayward by appellant, and two other men, at approximately 1:30 a.m. Appellant carried a shotgun; he told the victims that he didn't mind killing a few cops, and threatened to blow his victims to pieces.

Crimes: one burglary, two robberies, one count of injuring a telephone line.

c. *August 5: McCanless/Cardenas/Gamboa robberies*

Later that night, Edgar and Henry McCanless were robbed at gunpoint in the parking lot of the San Jose Holiday Inn by appellant, David Moore, and a third man. The assailants told the men to keep their heads down; when Henry looked up, he was hit on the head with a pistol barrel. The robbers threatened to blow their victims' heads off.

Cousins Denise Cardenas and Anthony Gamboa were also robbed during this incident. One of the men told Cardenas to take down her pants; when she refused, he ripped off most of her clothes, leaving her dressed only in her panties. Eventually all four were locked inside the trunk of McCanless' car, where they remained for almost 45 minutes before being rescued.

Crimes: four robberies, four false imprisonments.

d. *August 11: Slaybaugh robberies, rapes*

At about 2:30 a.m., Dennis and Linda Slaybaugh were entering their San Jose motel room with their seven-year-old son and sixteen-month-old daughter. Appellant and his brother robbed them; both men had revolvers. The men told the couple not to look up, and threatened to blow their heads off. Dennis was knocked out with a blow to his head with a gun. While Linda was lying on the floor holding her baby, she was raped by both men, one of whom also sodomized her. During the rape, a gun was pointed at the baby's face.

Crimes: one burglary, two robberies, two rapes (in concert), one count of sodomy (in concert), two assaults with a deadly weapon.

e. *August 15-16: car theft*

During the night, the Joe Bokman Chevrolet dealership in Los Altos was broken into; among vehicles taken was a light Chevrolet four-by-four pick-

up with blue stripes. This car was used by appellant and his brother in later offenses.

Crime: one count of auto theft.

f. *August 17-18: Cohoon altercation*

At about 11 p.m., two men were waiting for Ronald Cohoon outside his house. The Moores and some women drove up in a white truck. An argument started. Later that night, at about 1:30 a.m., someone started shooting at Cohoon's house. The evidence showed that a shotgun was fired at the house, and at least eleven .38 caliber bullets were fired into the house.

Crime: one count of firing into an inhabited dwelling house.

g. *August 18: Rogers/Muhlenbruch murders*

That same night, Eileen Rogers and her daughter Laura Muhlenbruch were killed in the garage of their apartment building. Both women were found on the steps leading from the garage to the lobby; Laura was nude except for shoes and socks and panties around her ankles. The two women had been shot by handguns. One shotgun shell was found outside the garage. Of three bullets taken from Muhlenbruch's body, one was definitely fired by a .38 Smith and Wesson found in the bushes behind 411 Fairmount. A .38 caliber Colt was also found there; one of the bullets in Muhlenbruch's body could have been fired by that weapon, and a bullet taken from Rogers' back may have been fired by the Colt.

Crimes: two counts of first degree murder, each with two special circumstances; two robberies.

h. *August 20: Bower/Bergamasco robberies, rapes*

Appellant, David Moore, and Charles Reese robbed Marlene Bergamasco and Lawrence Bower at Bower's home. Appellant had a shotgun, the other two, handguns. The robbers threatened to blow them away if they moved, and said they had killed before. Bower was tied up with a phone cord. Appellant told Bergamasco to get undressed, and then raped her. Then Reese forced her to orally copulate him, and raped and sodomized her. Next, David Moore raped and sodomized her.

Crimes: one burglary, two robberies, three rapes (in concert), one oral copulation (in concert), two counts of sodomy (in concert), two false imprisonments, and one count of injuring a telephone line.

### i. *August 21: Binzley robberies*

Two men robbed Debra Binzley and her brother Russ at their home. The robberies were interrupted in progress by police. Although the robbers escaped, they left behind the truck stolen from Bokman Chevrolet, loaded with property taken from the Binzley residence. As will be discussed, papers found in this truck led police to the apartment at 411 Fairmount where the Moores were living.

Crimes: one burglary, two robberies, two counts of injuring a telephone line; one false imprisonment.

### j. *August 25: Vargas/LaComba robberies*

Two men robbed roommates Adina Vargas and Alice LaComba and four other persons who were at their residence. The men threatened to blow the victims' heads off, and sexually fondled several of the women.

Crimes: one burglary, six robberies, one count of auto theft, one count of injuring a telephone line.

### *411 Fairmount, No. 107*

As will be discussed in more detail, *infra,* a search of the truck abandoned during the Binzley robberies led police to search apartment No. 107 at 411 Fairmount, Oakland. Wanda Baker and Audrey Lewis lived in that apartment. Baker shared a room there with David Moore, the father of one of her three children. Appellant started living there at the end of July. It is undisputed that during searches of that apartment, items were found which were taken in the Carter/Jensen, Stevens, McCanless, Slaybaugh, Muhlenbruch/Rogers, Bower, and Vargas/LaComba robberies.

### *Appellant's contentions and discussion*

Appellant contends: (1) the evidence is not sufficient to support the special circumstances findings; (2) a variance between the information and the verdicts is fatal to the special circumstances findings; (3) the trial court committed reversible error by denying appellant's motions to suppress evidence; (4) the trial court erred when it denied a motion to sever the capital counts from the noncapital counts; (5) the removal for cause of venirepersons solely because of their opposition to the death penalty deprived appellant of his right to a jury drawn from a fair cross-section of the community; (6) the denial of appellant's motion for an individualized and sequestered voir dire of prospective jurors was reversible error; (7) the jury was improperly in-

structed as to the intent required for a special circumstances finding; (8) the trial court's reference to appellant's appeal rights was reversible error; (9) the prosecutor committed prejudicial misconduct during argument; (10) the mandatory sentence of life without possibility of parole is unconstitutional; (11) the felony-murder rule is unconstitutional; (12) the court made sentencing errors which require remand for resentencing; remand is also required to allow the court to exercise its discretion and decide whether to strike the special circumstances findings.

I*

. . . . . . . . . . . . . . . . . . . . . . . . .

V

*Right to a jury chosen from a representative
cross-section of the community*

■ Appellant contends that removal for cause of venirepersons opposed to the death penalty denied him his right to a jury drawn from a fair cross-section of the community. Appellant and his brother joined in a pretrial motion regarding "death-qualifying" jurors. After an extensive evidentiary hearing, during which several experts testified and over 1,000 exhibits were admitted into evidence, the trial court denied the motion. (See *Hovey* v. *Superior Court* (1980) 28 Cal.3d 1, 8 [168 Cal.Rptr. 128, 616 P.2d 1301].) Jury selection commenced and was completed on December 3, 1979.

At some point during these events, Richard Hovey, a defendant in an unrelated capital case, filed a similar motion. By stipulation, the record of the evidentiary hearing in this case was introduced at the hearing on Hovey's motion; he offered no additional evidence. (*Ibid.*) After Hovey's motion was denied, he sought review by petition for writ of mandamus in the Supreme Court, which issued the alternative writ.

The prosecutor in this case then requested a continuance. He expressed concern that because the record in *Hovey* was identical to that in this case, it seemed likely that if defense counsel petitioned for a writ, this case would also be stayed; he wanted to know how defense counsel planned to proceed. Counsel indicated that they were prepared to proceed to trial; they had not abandoned the jury issue, but intended to raise it on appeal. After a lengthy discussion among court and counsel, the prosecutor's motion for continu-

---

*Parts I, II, III, and IV of this opinion are not certified for publication. (See fn., *ante,* at p. 709.)

ance was denied, and trial commenced. Trial in this case was completed in March 1980; the Supreme Court's decision in *Hovey* was filed in August 1980.

As the Supreme Court recently explained, a defendant who claims a violation of his right to a jury trial because of the exclusion of persons opposed to capital punishment from the guilt phase of his trial can advance three related contentions in support of that claim: (1) the exclusion of jurors who would automatically vote against death, but who assert that they could be impartial on the question of guilt, results in a jury biased in favor of the prosecution; (2) the exclusion of this group impairs the purpose and function of a criminal jury; and (3) the exclusion abridges the right to a jury chosen from a representative cross-section of the community. (*People* v. *Fields* (1983) 35 Cal.3d 329, 342 [197 Cal.Rptr. 803, 673 P.2d 680].)

In *Hovey* v. *Superior Court, supra,* 28 Cal.3d 1, the court pointed out that California practice excludes not only those persons who would automatically vote *against* the death penalty, but also those who would automatically vote in *favor* of death for any person convicted of first degree murder with special circumstances. (*Id.,* at pp. 63-64.) The court then concluded that the evidence was insufficient to demonstrate that a California "death-qualified" jury is unconstitutional on either of the first two theories discussed above, but it did not resolve the unrepresentative jury issue. (*Id.,* at pp. 63-69.) In *People* v. *Fields, supra,* 35 Cal.3d 329, however, four members of the court did reject the contention that exclusion for cause of persons who would automatically vote against the death penalty deprived a defendant of a jury drawn from a representative cross-section of the community at the guilt phase, thus impairing his right to jury trial. (*Id.,* at pp. 342-353 (plur. opn.), 374 (conc. opn. by Kaus, J.); see *People* v. *Zimmerman* (1984) 36 Cal.3d 154, 160-161 [202 Cal.Rptr. 826, 680 P.2d 776].)

In a related argument, appellant contends that death qualification of the jury in this case disproportionately excluded women and blacks, both of which are "cognizable groups" as that term is used in representative cross-section analysis. However, three members of the court in *Fields* expressly rejected a similar argument as unsupported by evidence (*People* v. *Fields, supra,* 35 Cal.3d at p. 349, fn. 7); as above indicated, a fourth justice concurred in the result reached by the plurality. (*Id.,* at p. 374.)

## VI

### *Denial of motion for sequestered voir dire of jurors*

In *Hovey* v. *Superior Court, supra,* 28 Cal.3d 1, the court also declared, pursuant to its supervisory powers over California criminal procedure, that

in future capital cases, that portion of the voir dire of each prospective juror dealing with issues which involve death-qualifying the jury should be done individually and in sequestration. (*Id.,* at p. 80.)

■ Relying on principles of collateral estoppel, appellant argues at length that because the record in *Hovey* was the record originally made in this case, the conclusion reached by the *Hovey* court should be applicable to this case. However, the court in *Hovey* expressly stated that sequestration would be required "in future capital cases," and this court must follow the Supreme Court's directive. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

In the alternative, he argues that even if *Hovey* is not applicable to this case, the trial court's denial of the motion for sequestered voir dire was erroneous. That contention is also unpersuasive. An *in camera* voir dire of prospective jurors might have been one way to proceed, but prior to *Hovey,* that procedure was not required. (*People* v. *Turner* (1984) 37 Cal.3d 302, 316 [208 Cal.Rptr. 196, 690 P.2d 669]; see *People* v. *Fimbres* (1980) 104 Cal.App.3d 780, 789 [163 Cal.Rptr. 876].)

VII\*

. . ` . . . . . . . . . . . . . . . . . . .

XII

*Sentencing; striking the special circumstances finding*

a. *Dismissing special circumstances*

After the trial in this case, the Supreme Court held that trial courts have authority under Penal Code section 1385 to dismiss special circumstances findings in furtherance of justice. (*People* v. *Williams* (1981) 30 Cal.3d 470, 489 [179 Cal.Rptr. 443, 637 P.2d 1029].)

■ Appellant contends that in light of *Williams,* the matter should be remanded to the trial court for the exercise of its discretion, to determine

---

\*Parts VII, VIII, IX, X, and XI of this opinion are not certified for publication. (See fn., *ante,* at p. 709.)

whether there is a basis for dismissing the finding of special circumstances, as was done in *People* v. *Chambers* (1982) 136 Cal.App.3d 444, 458 [186 Cal.Rptr. 306]. However, a similar argument was rejected in *People* v. *Sanders* (1983) 145 Cal.App.3d 218 [193 Cal.Rptr. 331], in which the court concluded that a remand to the trial court on that ground would be an idle act, because there was nothing in the record of the case which "even hints at any reason, which could be articulated and which could withstand meaningful appellate review, as a basis for finding that further leniency would be 'in furtherance of justice.'" (*Id.*, at pp. 222-228.) Nor is there anything in this record which suggests that a dismissal of the special circumstances finding would be "in furtherance of justice" in this case. (See also Pen. Code, § 1385.) For example, nothing in the record indicates that appellant was somehow less culpable than his colleagues. (Cf. *People* v. *Williams, supra,* 30 Cal.3d at p. 477.) Furthermore, unlike the situation in *Williams,* the jury in this case was required to find that appellant acted with the intent to cause death, and the evidence supports that finding. (Cf. *id.*, at p. 490.) Finally, nothing in the record suggests that the trial court in this case had a thwarted desire to exercise leniency. (Cf. *id.*, at p. 477 [court expresses desire to stay execution of special circumstances finding, but concludes that it is without authority to do so].) Under these circumstances, it is apparent that remand would be an idle act, and it is not required.

b. *The sentence*

The court sentenced appellant to life without possibility of parole on the two murder counts. If that sentence remained undisturbed, the court explained, punishment for the additional offenses would be concurrent, and it would be unnecessary to calculate the precise sentence for those offenses. The court added, "If, however, by act of the Governor or the Supreme Court, the special circumstances are set aside and the sentence reduced to straight life with possibility of parole, the Court wishes the Board of Prison Terms to know the feeling of the Court as to what the proper sentences should be for the conviction of the other crimes." It then computed a sentence totaling 60 years.

Appellant complains of numerous sentencing errors in this 60-year sentence, and urges remand for resentencing. However, this sentence would only come into effect if the special circumstances findings were to be reversed. Therefore, as we are affirming the judgment in its entirety, including the special circumstances findings, we need not address the sentencing errors alleged by appellant.

Judgment is affirmed.

Barry-Deal, J., and Anderson, J.,* concurred.

A petition for a rehearing was denied January 11, 1985, and appellant's petition for a hearing by the Supreme Court was denied February 27, 1985.

*Assigned by the Chairperson of the Judicial Council.