[No. A077646. First Dist., Div. One. May 29, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR LEE MARTIN, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Facts and part II. of the Discussion.

**COUNSEL**

Ronald Sweet, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Richard Rochman and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DOSSEE, J.**—Defendant appeals from his conviction of petty theft with a prior conviction for theft and raises two claims of error: (1) the prosecutor improperly exercised a peremptory challenge to remove a potential Black juror because she was a Jehovah's Witness and (2) the trial court erroneously instructed the jury to draw adverse inferences from defendant's failure to explain the evidence against him. We find no error and affirm the judgment.

### FACTS*

· · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### DISCUSSION

### I.  *Peremptory Challenge of Juror*

■   In *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], the California Supreme Court held that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by jury drawn from a representative cross-section of the community. Likewise, the United States Supreme Court, while rejecting the "fair cross-section" theory (*Holland* v. *Illinois* (1990) 493 U.S. 474 [110 S.Ct. 803, 107 L.Ed.2d 905]), has condemned peremptory challenges on the basis of group bias as a violation of the right to equal protection of the laws under the Fourteenth Amendment. (*Batson* v. *Kentucky* (1986) 476 U.S. 79, 89 [106 S.Ct. 1712, 1719, 90 L.Ed.2d 69].)

Under both *Wheeler* and *Batson*, a defendant who challenges the prosecutor's use of peremptory challenges must make out a prima facie case that the excluded jurors are members of a cognizable group and must show a strong likelihood that the jurors are being challenged because of their group association rather than because of any specific bias.[1] The burden then shifts to the prosecution to come forward with a neutral explanation related to the particular case to be tried. (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1216 [255 Cal.Rptr. 569, 767 P.2d 1047].)

■   In the present case, defendant, who represented himself at trial, made a *Wheeler* motion based on the exclusion of the only two Black prospective

---

*See footnote, *ante*, page 378.

[1] The courts have now clarified that the defendant need not be a member of the excluded group; it is enough that the challenged *juror* was a member of a cognizable group. (*Powers* v. *Ohio* (1991) 499 U.S. 400 [111 S.Ct. 1364, 113 L.Ed.2d 411]; *People* v. *Fuentes* (1991) 54 Cal.3d 707, 714 [286 Cal.Rptr. 792, 818 P.2d 75].)

jurors called into the jury box. The trial court found that defendant had made a prima facie showing of systematic exclusion and called upon the prosecutor to justify the peremptory challenges. The prosecutor then proffered explanations for the exclusion of the two potential jurors. On appeal, defendant challenges the exclusion of only one of those jurors, juror No. 4.

Juror No. 4 had indicated on her questionnaire that she has "moral, religious, or other principals [sic] that make it difficult to determine whether someone is guilty or not." When asked to explain, the juror replied, "I'm a Jehovah's Witness, so it depends upon the nature of the case. . . . [A] case where the death penalty would be introduced, that's the only thing I have problems with." The trial court then asked the juror whether her beliefs would cause difficulty in sitting on a jury in a case that does not involve the death penalty, and the juror replied, "No."[2]

The prosecutor explained his peremptory challenge by stating that juror No. 4 was a Jehovah's Witness and, although the juror had said during voir dire that her religious beliefs would not cause her difficulty in this noncapital case, the prosecutor's experience with Jehovah's Witnesses had been that they have a hard time with criminal trials as "they couldn't judge anybody at all." The prosecutor said, "I thought that I wouldn't want to take a chance if she had any hesitations whatsoever with the religious principals [sic] in judging and finding somebody guilty."

Defendant immediately objected to the prosecutor's stated justification, arguing that the prosecutor should not "judge people on their religion." The trial court found the prosecutor's reasons to be "neutral" and denied the *Wheeler* motion.

Defendant now seems to concede that the prosecutor's justification for challenging juror No. 4 was *race*-neutral. He argues, however, that the prosecutor "simply substituted one form of discrimination for another"; that the prosecutor's peremptory challenge based solely on religion was just as impermissible as a challenge based on race.

This issue is apparently one of first impression in California. The California Supreme Court has said that ". . . when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, *religious*, ethnic, or similar grounds—we may call this 'group bias'—and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement."

---

[2]Juror No. 4 also said she has an uncle who is a "career criminal," who has been charged with the crime involved in the case and who has been to prison.

(*People* v. *Wheeler, supra*, 22 Cal.3d at p. 276 italics added.) However, both *Wheeler* and *Batson* involved exclusion of jurors on racial grounds. Although the *Wheeler-Batson* doctrine has been extended beyond racial discrimination to prohibit peremptory challenges based solely on gender (*J.E.B.* v. *Alabama ex rel. T.B.* (1994) 511 U.S. 127 [114 S.Ct. 1419, 128 L.Ed.2d 89]; *People* v. *Cervantes* (1991) 233 Cal.App.3d 323, 334 [284 Cal.Rptr. 410]) or ethnicity (*People* v. *Trevino* (1985) 39 Cal.3d 667, 686-687 [217 Cal.Rptr. 652, 704 P.2d 719], disapproved on another point in *People* v. *Johnson, supra*, 47 Cal.3d at pp. 1219-1221), neither the California Supreme Court nor the United States Supreme Court has yet been presented with a case involving exclusion of jurors on the basis of religion.[3]

Courts in other jurisdictions, however, have examined the use of peremptory challenges to exclude prospective jurors who are Jehovah's Witnesses, and those courts have permitted the exclusion based upon the juror's religious views.

In *State* v. *Davis* (Minn. 1993) 504 N.W.2d 767, certiorari denied 511 U.S. 1115 [114 S.Ct. 2120, 128 L.Ed.2d 679], the defendant's challenge to the prosecutor's peremptory challenge was based, as it was here, upon the race of the potential juror. The question then arose whether the prosecutor's justification was adequate, and the court observed as follows: "If the prosecutor had said no more than she was striking the black juror because he was a Jehovah's Witness, we think this would not have rebutted the prima facie case of racial bias, anymore than if the prosecutor had said she was striking because the black juror was a Lutheran, a Baptist, or a Muslim. In fact, however, the prosecutor went on to explain the reason for her challenge, pointing out Jehovah's Witnesses, as a group, were reluctant to exercise civil authority over other people and that the juror was a devoted member of that religious group." (504 N.W.2d at p. 772.)

The *Davis* court reasoned that unlike racial bigotry, discrimination on the basis of religious beliefs has relevance to the process of jury selection. That is, a juror's religious beliefs may produce views on such secular matters as use of intoxicating liquor, cohabitation, necessity of medical treatment, civil disobedience, and the like, and when they do, a peremptory challenge on the basis of such views is not attributable to religious bias. (504 N.W.2d at p.

---

[3]The United States Supreme Court denied certiorari in a case in which the Minnesota Supreme Court permitted striking a juror because he was a Jehovah's Witness. (*Davis* v. *Minnesota* (1994) 511 U.S. 1115 [114 S.Ct. 2120, 128 L.Ed.2d 679].) Justice Thomas, dissenting from the denial of certiorari, expressed the view that *Batson* should apply to peremptory challenges based on a classification that is accorded heightened scrutiny under the equal protection clause—"a category which presumably would include classifications based on religion." (*Id.* at pp. 1116-1117 [114 S.Ct. at p. 2121].)

771.) The *Davis* court concluded that *Batson* does not extend to a peremptory strike based on religion. (*Ibid.*)

In a subsequent case, the North Carolina Supreme Court drew a similar distinction between religious affiliation and relevant religious views. In *State v. Eason* (1994) 336 N.C. 730 [445 S.E.2d 917], the prosecutor exercised a peremptory challenge to excuse a juror who was a Jehovah's Witness, and the prosecutor justified the challenge on two grounds: First, the prosecutor understood that Jehovah's Witnesses do not believe in the death penalty, and the prosecutor feared that the juror's religious beliefs would interfere with her ability to deliberate on the issue of punishment.[4] Second, the prosecutor noted that during the voir dire examination the juror had expressed mixed feelings about the death penalty. The North Carolina Supreme Court concluded that although exclusion of a potential juror on the sole basis of religion would violate the state Constitution, the exclusion in that case was not based solely on the juror's religious affiliation. Rather, the court noted that the prosecutor had done even more than was done in *State v. Davis, supra,* 504 N.W.2d 767; the prosecutor made a specific inquiry to discover how the juror's religious beliefs might affect her ability to follow the law. And the juror was excused because of her expressed reservations about the death penalty, not because of her religion. (445 S.E.2d at pp. 921-923.)

Most recently, in *Casarez v. State* (Tex.Crim.App. 1995) 913 S.W.2d 468, 492-496, the Texas Court of Criminal Appeals, in an in bank decision on rehearing, upheld the prosecutor's peremptory challenges of two Black veniremembers on the basis of their Pentecostal religion. The *Casarez* court ultimately concluded, as did the *Davis* court, that *Batson* does not extend to peremptory removal of prospective jurors on account of their religious affiliation. The *Casarez* court reasoned as follows: "With few exceptions, the only significant thing that members of a religious faith have in common is their belief in certain principles, doctrines, or rules. To the extent that they have historically been the objects of discrimination, it is on account of these beliefs and not on account of anything else. Yet discrimination on the basis of personal belief has always been considered appropriate in the jury selection context because a veniremember's beliefs reveal an especially important bit of information about his suitability for jury service. They tell us what some of his sympathies and prejudices are. [¶] . . . [¶] . . . The treatment of religious creed as an inappropriate basis for peremptory exclusion cannot

---

[4]The defendant in *Eason* complained that the prosecutor had stereotyped Jehovah's Witnesses in stating his understanding that Jehovah's Witnesses do not believe in the death penalty. The court rejected the argument: "What this statement does is briefly state the prosecutor's knowledge of a specific tenet of that religious faith. An attorney cannot be expected to ignore all outside knowledge and experience when exercising peremptory challenges." (445 S.E.2d at p. 922.)

rationally be distinguished from a similar treatment of persons on account of their Libertarian politics, their advocacy of communal living, or their membership in the Flat Earth Society. [¶] . . . If it is permissible to discriminate against prospective jurors on account of their beliefs, then it is necessarily permissible to discriminate against them on account of their religion, for discrimination on the basis of religion is discrimination on the basis of belief." (913 S.W.2d at pp. 495-496.)

In the present case, as in *Davis*, the prosecutor's response to defendant's claim of racial discrimination was not a mere assertion that the juror was a Jehovah's Witness. Rather, as in *Davis*, the prosecutor expressed his understanding that Jehovah's Witnesses decline to judge others. It is true that juror No. 4 did not express actual reservations about her ability to deliberate, and in this respect the present case is distinct from the *Eason* case. However, we emphasize that the justification for a peremptory challenge need not rise to grounds for a challenge for cause; the prosecutor need not show *actual* bias. What the prosecutor must show is that the peremptory challenge was seeking to eliminate *specific* bias—a bias relating to the particular case being tried. (*People* v. *Wheeler, supra*, 22 Cal.3d at pp. 274-276; *Batson* v. *Kentucky, supra*, 476 U.S. 79, 97-98 [106 S.Ct. 1712, 1723].)[5] The prosecutor's perception that the juror's religious views might render her uncomfortable with sitting in judgment of a fellow human being was a specific bias related to the individual juror's suitability for jury service.

Because the California Supreme Court has indicated, albeit in dictum, that the use of peremptory challenges to exclude jurors solely on the basis of religion would be unconstitutional (*People* v. *Wheeler, supra*, 22 Cal.3d at pp. 276-277), we cannot agree with the conclusions of the courts in *Casarez* and *Davis* that the rule of *Batson* v. *Kentucky* does not extend to religious discrimination. Nonetheless, we follow the reasoning of those courts that

---

[5]The California Supreme Court illustrated specific bias as follows: "For example, a prosecutor may fear bias on the part of one juror because he has a record of prior arrests or has complained of police harassment, and on the part of another simply because his clothes or hair length suggest an unconventional lifestyle. In turn, a defendant may suspect prejudice on the part of one juror because he has been the victim of crime or has relatives in law enforcement, and on the part of another merely because his answers on voir dire evince an excessive respect for authority. Indeed, even less tangible evidence of potential bias may bring forth a peremptory challenge: either party may feel a mistrust of a juror's objectivity on no more than the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another' (4 Blackstone, Commentaries *353)—upon entering the box the juror may have smiled at the defendant, for instance, or glared at him. Responsive to this reality, the law allows removal of a biased juror by a challenge for which no reason 'need be given,' i.e., publicly stated: in many instances the party either cannot establish his reason by normal methods of proof or cannot do so without causing embarrassment to the challenged venireman and resentment among the remaining jurors." (*People* v. *Wheeler, supra*, 22 Cal.3d at p. 275, fn. omitted.)

exclusion of a juror on the basis of the juror's beliefs is a legitimate use of the peremptory challenge. (See *U.S.* v. *Somerstein* (E.D.N.Y. 1997) 959 F.Supp. 592 [exclusion of Jews when religious practices intertwined with the criminal charges].)

The California Supreme Court has held that the use of peremptory challenges to exclude persons on the basis of their personal views, e.g., reservations about the death penalty, does not violate *Wheeler*. (*People* v. *Pinholster* (1992) 1 Cal.4th 865, 913 [4 Cal.Rptr.2d 765, 824 P.2d 571]; *People* v. *Zimmerman* (1984) 36 Cal.3d 154, 161 [202 Cal.Rptr. 826, 680 P.2d 776].) And before the enactment of Code of Civil Procedure section 223, the court held that prospective jurors could be questioned about their attitudes and beliefs for purposes of assisting in the exercise of peremptory challenges. (*People* v. *Williams* (1981) 29 Cal.3d 392 [174 Cal.Rptr. 317, 628 P.2d 869]; see also *People* v. *Balderas* (1985) 41 Cal.3d 144, 183-184 [222 Cal.Rptr. 184, 711 P.2d 480].) We are persuaded that the peremptory challenge of a juror on the basis of the juror's relevant personal values is not improper even though those views may be founded in the juror's religious beliefs.

II.   *Jury Instruction**

. . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Stein, Acting P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 26, 1998. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 378.