18 P.3d 113

**STATE of Arizona, Appellee,**

v.

**Bobby Charles PURCELL, Appellant.**

**No. 1 CA–CR 99–0781.**

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 4, 2001.

Janet A. Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Galen H. Wilkes, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

EHRLICH, Judge.

¶1 Bobby Charles Purcell appeals from his convictions and sentences for two counts of first-degree murder and eleven other offenses arising from the same shooting. For the following reasons, we affirm all of the convictions and all but one of the sentences, remanding the conviction for misconduct involving weapons for resentencing.

### FACTS AND PROCEDURAL HISTORY

¶2 On the evening of June 6, 1998, Purcell was a passenger in a vehicle when it passed a group of young people. Purcell, a member of the Westside Phoeniquera street gang, flashed a gang sign, whereupon several of these teenagers waved. Apparently believing, though, that they had flashed the sign of a rival gang, Purcell told the driver of the car to stop. When the driver obeyed,

Purcell got out of the vehicle, carrying a sawed-off shotgun, yelled "Westside Phoeniquera" to the group, fired one shot, got back in the car and told the driver to leave. The shot killed two of the teenagers and injured a third.

¶3 Arrested two days later, Purcell admitted firing the shot. He was charged with two counts of first-degree (premeditated) murder, class 1 felonies, nine counts of attempted first-degree murder, class 2 felonies, aggravated assault, a class 3 felony, and misconduct involving weapons, a class 4 felony. All but the misconduct were charged as dangerous offenses, and the State gave notice that it intended to seek the death penalty.

¶4 At trial, Purcell admitted that he had fired the shot. The only issues were whether he had intended to kill anyone and whether he had committed the act with premeditation.[1]

¶5 Purcell was found by a jury to be guilty as charged. The trial court sentenced him to consecutive life terms without the possibility of release for the first-degree murders. It further imposed aggravated terms of 15 years for each of the nine attempted murders and the aggravated assault and an aggravated term of eight years for the misconduct involving weapons, these sentences to run concurrently with each other but consecutively to Purcell's life sentences.

### DISCUSSION

¶6 Purcell raises several issues concerning the selection of the jury. He also argues that the trial court improperly enhanced his sentence for misconduct involving weapons.

#### A. Purcell's Strikes for Cause

¶7 Purcell argues that the trial court erred in denying his motion to strike for cause two prospective jurors, Juror 43 and Juror 50. He contends that they should have been excused because each indicated agreement with the proposition that firing a gun into a crowd constitutes proof of premedita-

---

1. At the time of the offense, "premeditation" was defined as requiring actual reflection, and the jury was so instructed. *State v. Ramirez*, 190 Ariz. 65, 70, 945 P.2d 376, 381 (App.1997). The legislature subsequently eliminated the requirement that there have been "actual reflection." Laws 1998, Ch. 289, § 6; Ariz Rev.Stat ("A.R.S.") § 13–1101(1) (Supp.2000).

tion. With respect to Juror 50, Purcell maintains further that she should have been excused because her niece had been killed in a similar incident.

■ ¶ 8 A trial court must dismiss a juror for cause when "there is reasonable ground to believe that a juror cannot render a fair and impartial verdict." ARIZ.R.CRIM.P. 18.4(b); *State v. Lavers,* 168 Ariz. 376, 390, 814 P.2d 333, 347, *cert. denied,* 502 U.S. 926, 112 S.Ct. 343, 116 L.Ed.2d 282 (1991). Cause exists if the juror expresses serious misgivings about the ability to be unbiased, *State v. Smith,* 182 Ariz. 113, 115, 893 P.2d 764, 766 (App.1995), but, if the juror ultimately assures the court that he or she can be fair and impartial, the juror need not be excused. *State v. Reasoner,* 154 Ariz. 377, 384, 742 P.2d 1363, 1370 (App.1987).

■ ¶ 9 Because the trial court is able to observe the juror's demeanor and thereby evaluate the juror's credibility, it is in the best position to make this assessment. *Lavers,* 168 Ariz. at 390, 814 P.2d at 347. We therefore will not disturb its decision on a motion to strike a juror for cause absent a clear showing of an abuse of its discretion. *Id.* The party claiming that the court erred in denying a motion to strike has the burden of demonstrating that the juror was incapable of rendering a fair and impartial verdict. *Id.*

¶ 10 Purcell argues that the trial court's failure to excuse Jurors 43 and 50 for cause abridged his right to a full complement of peremptory challenges necessitating as it did that he use two peremptory strikes to remove these jurors. Thus, he contends, he is entitled to a new trial. *State v. Huerta,* 175 Ariz. 262, 263, 855 P.2d 776, 777 (1993); *but see United States v. Martinez–Salazar,* 528 U.S. 304, 316, 120 S.Ct. 774, 782, 145 L.Ed.2d 792 (2000)("[A] defendant's exercise of peremptory challenges ... is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause.").[2]

¶ 11 Jury selection was conducted over two days, and, on Purcell's motion, a written

questionnaire was used to supplement voir dire. The questionnaire advised the jurors that Purcell had fired a shotgun blast into a crowd of people and that, while he admitted the shooting, he denied killing with intent or premeditation.

■ ¶ 12 Juror 50 wrote in her questionnaire that she had "feelings" about the case that might affect her ability to be impartial because the circumstances were similar to those in which her niece was killed years before. She elaborated, however, that she felt that justice had been served in her niece's case and that, while she could relate to the victims' families, she believed that she could be fair. During voir dire, Purcell asked Juror 50 if she could set aside the experience with her niece, and she responded:

> I think I can. I had to make closure with that. We all had to make closure with that. It's something unnecessary. The reason why I mentioned it is because the situation was similar, it was another youth, 17. She happened to get the bullet. Wrong place at the wrong time.

¶ 13 Purcell has not demonstrated that Juror 50 could not be fair and impartial. Although Juror 50 initially indicated that the experience involving her niece might affect her, she expressed the belief that she could set aside the circumstances of her niece's death and be dispassionate. The trial court did not abuse its discretion in refusing to strike Juror 50 for cause.

■ ¶ 14 Purcell also argues that Juror 43 and Juror 50 should have been excused for cause based on their expressed views that shooting into a crowd of people indicates premeditation. Juror 50, when asked in the questionnaire if she had formed an opinion from media exposure about whether Purcell had acted with premeditation, wrote that she had formed an opinion but not based on media exposure. She explained that the "intent to randomly shot [sic] in a crowd is to cause bodily harm with the knowledge that a gun can kill."

---

2. In light of our conclusion that the trial court did not err, we need not resolve the discrepancy between *Huerta* and *Martinez–Salazar. State v.*

*Martinez,* 196 Ariz. 451, 458–59, ¶¶ 26–28, 999 P.2d 795, 802–03, *cert. denied,* —— U.S. ——, 121 S.Ct. 320, 148 L.Ed.2d 257 (2000).

¶ 15 In addition, during voir dire, Purcell asked if any of the jurors believed that shooting into a crowd showed premeditation. While he claims that Juror 43 and Juror 50 raised their hands in response, the record does not reflect who in fact raised their hands. The trial court later advised the jurors that they were expected to decide the case based on the evidence presented at trial and not on the voir dire discussion or on the information in the questionnaire. The court then asked the jurors if any of them had made up his or her mind before hearing the evidence. The record shows that some jurors raised their hands in response, but, again, it does not reflect their identity. However, in denying Purcell's motion to strike Jurors 43 and 50, the court noted that the jurors remaining on the panel "all indicate a willingness to follow the law, to apply the law and impartially judge the facts." Thus there is no suggestion in the record that the court abused its discretion in denying Purcell's motion to strike these jurors on the basis of any alleged opinion regarding premeditation.

■■ ¶ 16 Even assuming that Jurors 43 and 50 responded affirmatively to Purcell's inquiry, we find no abuse of discretion in the trial court's refusal to excuse them. Expressing a general opinion that firing a shot into a crowd suggests premeditation does not constitute per se the inability to fairly and impartially evaluate the evidence presented at trial in light of appropriate instructions. *Martinez*, 196 Ariz. at 459, ¶ 28, 999 P.2d at 803 ("A juror's preconceived notions or opinions about a case do not necessarily render that juror incompetent to fairly and impartially sit in a case."). Absent any word to the contrary in the record, each juror understood and accepted the principle that Purcell was innocent until proven guilty and recognized that the State had the burden of proving Purcell's guilt beyond a reasonable doubt.

### B. Challenges to the Prosecutor's Peremptory Strikes

¶ 17 Purcell claims that the trial court improperly permitted the prosecutor to use a peremptory strike to remove a juror based on religion in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Article 2, Section 12 of the Arizona Constitution.

¶ 18 Juror 8, a secretary with the Catholic Diocese of Phoenix for eight years at the time, wrote twice in her questionnaire that she was opposed to the death penalty. She also responded "yes" to the question, "Do you have any conscientious or religious principles or feelings that would prevent you from voting for First Degree Murder because of the possible imposition of the death penalty?" In addition, she wrote, "The Catholic Church is against the death penalty. I work for the diocese and I am Catholic." During voir dire, Juror 8 affirmed that she did not believe in capital punishment, but she told the trial court that her opinion would not affect her ability to be fair and impartial.

¶ 19 The prosecutor exercised a peremptory strike to remove Juror 8. Purcell objected, arguing that it violated *Batson* on two bases: one, that she is Hispanic and, two, that she is Catholic. The prosecutor responded that only one *Batson* ground existed, that Juror 8 is Hispanic, and he gave the following as his reasons for the strike:

THE PROSECUTOR: [S]he works for the Diocese of Phoenix. The Bishop come [sic] out specifically on Good Friday and said you Catholics should start to be against the death penalty. The Pope has spoken about that.

I feel that the pressure of whatever she may have said, her work pressure and those kinds of pressures would be really too much for her when it really came down to it to completely be objective with regard to premeditated murder if she felt that would then make an option for this defendant to be sentenced.

Therefore, my articulated reason is that and I feel that based upon—there are specifically two specific statements at [questionnaire] page number 26: "I can say that I am against the death penalty." And then again, under 27: "I am against the death penalty."

I feel that the pressure for her being employed by the diocese would be too

much for her. And that's my articulated reason.

THE COURT: So you're saying, you said being employed by the diocese, being Catholic and being employed, not just being Catholic; is that correct?

THE PROSECUTOR: Correct.

¶ 20 Purcell argued that, regardless of the juror's employment, by referring to the Pope and the Bishop, the prosecutor had proffered a theory according to which no Catholic could sit on a case in which the death penalty was being sought. He stressed that Juror 8 had said that she could view the facts fairly.

¶ 21 The trial court ruled as follows:

Well, I do fine [sic], first of all, I'm not sure religion has been said to be a Batson issue. But, secondly to me that if a lawyer were to strike, just say I'm striking the Catholics on the panel, then that would be a Batson issue. It seems to me what you've got that is articulated by this juror and what her beliefs are and they coincide with the beliefs of the church. Plus, she is an employee of the church. Those to [sic] things together are certainly, they [sic] racially neutral, ethically [sic] neutral and religiously neutral things that go to her ability to exercise independent judgement with regard to first-degree murder.

\* \* \*

So I just don't think this is—I'm not sure that religion is included. I would see a problem if we were having the State or anybody else trying to strike jurors because of their religion. But what you've got here is a confusion of religion, employment, and an issue on which the church, as an employer, has taken a position and I think ought to make the strike acceptable as a preemptory [sic] strike. So the objection is overruled.

¶ 22 A party may not exercise a peremptory strike on the basis of gender, race or ethnicity. *J.E.B. v. Alabama,* 511 U.S. 127, 140, 114 S.Ct. 1419, 128 L.Ed.2d 89

(1994); *Batson,* 476 U.S. at 85–86, 106 S.Ct. 1712; *State v. Hernandez,* 170 Ariz. 301, 304, 823 P.2d 1309, 1312 (App.1991). However, a peremptory strike is permissible for any reason related to the party's view of the outcome of the case. *Batson,* 476 U.S. at 89, 106 S.Ct. 1712.

¶ 23 An opponent to a peremptory strike first must present a *prima facie* showing of prohibited discrimination. *Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Martinez,* 196 Ariz. at 456, ¶ 16, 999 P.2d at 800; *State v. Murray,* 184 Ariz. 9, 24, 906 P.2d 542, 557 (1995), *cert. denied,* 518 U.S. 1010, 116 S.Ct. 2535, 135 L.Ed.2d 1057, and *cert. denied,* 519 U.S. 874, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996). The proponent of the strike then must provide a neutral explanation, although the explanation need not be "persuasive or even plausible, only 'legitimate.'" *Purkett,* 514 U.S. at 768–69, 115 S.Ct. 1769; *Martinez,* 196 Ariz. at 456, ¶ 16, 999 P.2d at 800, quoting *Purkett, id.; Murray,* 184 Ariz. at 24, 906 P.2d at 557. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed neutral. *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769; *Murray,* 184 Ariz. at 24, 906 P.2d at 557. Finally, the trial court must determine if the opponent of the strike has shown discrimination, taking into account the credibility and persuasiveness of the proponent's explanation. *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769; *Martinez,* 196 Ariz. at 456, ¶ 16, 999 P.2d at 800; *Murray,* 184 Ariz. at 24, 906 P.2d at 557.

¶ 24 Purcell argues that the trial court erred in denying his challenge to the prosecutor's peremptory strike of Juror 8. He contends that the prosecutor struck the juror because she is Catholic and asserts that the *Batson* analysis should be extended to apply to purposeful discrimination on the basis of religion.

¶ 25 Although neither the United States Supreme Court nor the Arizona appellate courts have addressed the issue,[3] other jurisdictions have extended *Batson* to per-

**3.** In *Martinez,* 196 Ariz. at 456, ¶ 15, 999 P.2d at 800, the court declined to reach this issue because the prosecutor struck the juror due to the

juror's status as a "forgiving pastor" and opposition to the death penalty and not because of the juror's religious affiliation.

emptory strikes based on religious membership or affiliation. *State v. Hodge*, 248 Conn. 207, 726 A.2d 531, 552–54(while *Batson* applies to challenges based on religious affiliation, a challenge based on a juror's beliefs is legitimate), *cert. denied*, 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999); *People v. Martin*, 64 Cal.App.4th 378, 75 Cal.Rptr.2d 147, 150–51, (1998)(same, following dicta in *People v. Wheeler*, 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748, 761 (1978)); *see also United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir.)(stating in dicta that it would be improper and perhaps unconstitutional to strike a juror based on religious affiliation, although it would be proper to strike a juror based on a specific belief supported by a religious conviction), *cert. denied*, 525 U.S. 849, 119 S.Ct. 123, 142 L.Ed.2d 99 (1998); *but see Casarez v. State*, 913 S.W.2d 468, 492–96 (Tex.Crim.App.1994)(en banc)(*Batson* does not extend to strikes based on religious affiliation); *State v. Davis*, 504 N.W.2d 767, 771 (Minn.1993)(declining to extend *Batson* to religion), *cert. denied*, 511 U.S. 1115, 114 S.Ct. 2120, 128 L.Ed.2d 679 (1994).[4] We agree with those cases in which *Batson* has been extended to encompass peremptory

strikes based upon religious membership or affiliation.

¶ 26 A classification receives strict scrutiny under the Equal Protection Clause when it discriminates against a person on the basis of that person's exercise of a fundamental right, *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), of which the free exercise of religion is one. *See Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 523–24, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); *Johnson v. Robison*, 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Wisconsin v. Yoder*, 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Additionally, fundamental rights sometimes are melded with the Equal Protection Clause. *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 384–85 n. 4, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)("This Court itself has occasionally fused the First Amendment into the Equal Protection Clause ... but at least with the acknowledgment ... that the First Amendment underlies its analysis."); *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).[5] It follows then

---

4. The Supreme Court denied certiorari in the *Davis* case, which had been decided prior to *J.E.B.* However, in his dissent from the denial of the petition for writ of certiorari, Justice Clarence Thomas, joined by Justice Antonin Scalia, wrote:

> [i]n breaking the barrier between classifications that merit strict equal protection scrutiny and those that receive what we have termed heightened or intermediate scrutiny, *J.E.B.* would seem to have extended *Batson's* equal protection analysis to all strikes based on the latter category of classifications—a category which presumably would include classifications based on religion.

511 U.S. at 1117, 114 S.Ct. 2120 (internal quotation marks omitted)(Thomas, J., dissenting).

5. In addition to being a fundamental right, religious affiliation also may be a suspect classification under the Equal Protection Clause. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 885, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985)(O'Connor, J., dissenting)(strict scrutiny applies when "inherently suspect distinctions such as race, religion, or alienage" are implicated, quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)); *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)(Heightened scrutiny is appropriate for "statutes directed at par-

ticular religious, or national or racial minorities.") (citations omitted); *see* Benjamin Hoorn Barton, Note, *Religion–Based Peremptory Challenges After* Batson v. Kentucky *and* J.E.B. v. Alabama: *An Equal Protection and First Amendment Analysis*, 94 Mich.L.Rev. 191, 205–07 (1995).

Whether the analysis is pursuant to the First Amendment or the Equal Protection Clause, the standard of review is the same: The law or practice must be narrowly tailored to achieve a compelling interest. *Compare Lukumi*, 508 U.S. at 533, 113 S.Ct. 2217 (applying this standard to First Amendment analysis of a law discriminating on the basis of religion) *with Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 274, 279–80, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986)(applying this standard to Equal Protection analysis of racial classifications). As Justice Sandra Day O'Connor has written:

> [An] emphasis on equal treatment is, I think, an eminently sound approach. In my view, the Religion Clauses-the Free Exercise Clause, the Religious Test Clause, Art. VI, cl. 3, and the Equal Protection Clause as applied to religion-all speak with one voice on this point: Absent the most unusual circumstances, one's religion ought not affect one's legal rights or duties or benefits.

*Board of Educ. of Kiryas Joel Village School Dist. v. Grumet*, 512 U.S. 687, 715, 114 S.Ct. 2481,

that a law that operates to facially discriminate against religious membership or affiliation must receive strict scrutiny and be so narrowly tailored as to achieve a compelling government purpose in order to be found constitutional. *Lukumi,* 508 U.S. at 532–33, 113 S.Ct. 2217.[6]

¶ 27 Our resolution would be the same even were strict scrutiny not the appropriate standard but intermediate scrutiny. The State's interest in peremptory challenges is to ensure an impartial and unbiased jury. *J.E.B.,* 511 U.S. at 136–37, 114 S.Ct. 1419. When determining whether gender-based peremptory challenges pass intermediate scrutiny,[7] the Court looked at whether exclusion on the basis of gender substantially furthers the goal of empaneling a fair and impartial jury. *Id.* It found that peremptory strikes based on gender do not substantially further this goal and therefore do not meet the intermediate standard of review for gender discrimination. *Id.* at 136–143, 114 S.Ct. 1419. Thus, the Court extended *Batson* from racial classifications which receive strict scrutiny to gender classifications which receive intermediate scrutiny. *Id.*

¶ 28 The State cannot meet the standard that is required to permit discrimination based upon religious membership. A peremptory strike based on religious affiliation is not narrowly tailored to achieve a compelling interest. "Although one's religious *beliefs* may render a prospective juror unsuitable for service in a particular case, one's religious *affiliation,* like one's race or gender, bears no relation to that person's ability to serve as a juror." *Hodge,* 726 A.2d at 553 (emphasis original); *Martin,* 75 Cal. Rptr.2d at 150–51; *Stafford,* 136 F.3d at 1114. Therefore, to strike a juror based on religious affiliation is both over-inclusive and under-inclusive, neither of which is narrowly tailored. *See* Barton, Note, *Religion–Based*

*Peremptory Challenges,* 94 Mich.L.Rev. at 209–12. And the prosecutor has a less-restrictive alternative available to discover bias in a juror: asking questions in voir dire to discover the juror's actual beliefs. In *J.E.B.,* the Court stated:

> Parties may also exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review. Even strikes based on characteristics that are disproportionately associated with one gender could be appropriate, absent a showing of pretext.
>
> If conducted properly, *voir dire* can inform litigants about potential jurors, making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. *Voir dire* provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently.

511 U.S. at 143–44, 114 S.Ct. 1419 (citations and footnote omitted).

¶ 29 Furthermore, to allow the State to use peremptory strikes based on religious affiliation would condition the right to free exercise of religion upon a relinquishment of the right to jury service. *See McDaniel v. Paty,* 435 U.S. 618, 626–29, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978)(invalidating a law that disqualified members of the clergy from holding certain public offices, because it imposed special disabilities on the basis of religious status); *Powers v. Ohio,* 499 U.S. 400, 406–07, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)(recognizing the right to serve on a jury as an important democratic right). As the Court stated in *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), "[i]n our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption—as a

---

129 L.Ed.2d 546 (1994)(O'Connor, J., concurring); *see also* Barton, Note, *Religion–Based Peremptory Challenges,* 94 Mich L.Rev. at 197–209.

6. Strict scrutiny also applies to intentional government discrimination against religion under the Establishment Clause. *Larson v. Valente,* 456 U.S. 228, 246, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982).

7. The Court in *J.E.B.* framed the "intermediate" standard for gender classifications as requiring that the state have "an exceedingly persuasive justification" and that the classification at issue be "substantially related" to achieving an "important government objective". *Id.* at 136–37 n. 6, 114 S.Ct. 1419.

**328**

per se rule—that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the *choice of religion.*" Quoting *Ristaino v. Ross,* 424 U.S. 589, 596 n. 8, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976)(emphasis added). Thus, we believe that *Batson* and *J.E.B.,* pursuant to the First and Fourteenth Amendments, prohibit the use of peremptory strikes based upon one's religious affiliation but not based upon one's relevant opinions, although such opinions may have a religious foundation.

¶ 30   Here, presaging this opinion, the trial court stated that, although it did not think that *Batson* had been extended to religion, it believed *Batson* pertinent. It then applied *Batson* and found the prosecutor's explanation for his strike of Juror 8 to be "religiously neutral," driven instead by a combination of factors related to the juror's ability to exercise independent judgment with respect to the first-degree-murder charges. As stated before, we give great deference to the court's determination that the reasons for a peremptory strike are nondiscriminatory because such a decision constitutes a finding based on an evaluation of the proponent's credibility. *Lavers,* 168 Ariz. at 390, 814 P.2d at 347.

■■■ ¶ 31   The record supports the trial court's finding that the prosecutor's reason for striking Juror 8 was her opposition to the death penalty and the related concerns about the pressure she might face from her employer, which also opposed the death penalty, and thus her ability to apply the law as required on the capital charges. Although Juror 8's religious views were intertwined with these other factors, her religious membership was not the basis for striking her from the jury panel, and her opposition to capital punishment was a legitimate basis for exercising a peremptory strike. *Martinez,* 196 Ariz. at 456, ¶¶ 15–17, 999 P.2d at 800; *State v. Bolton,* 182 Ariz. 290, 302, 896 P.2d 830, 842 (1995)("Nothing about a person's views on the death penalty invokes heightened scrutiny under the Equal Protection Clause. Thus, *Batson* does not limit the use of peremptory challenges to exclude jurors because of their reservations about capital punishment."). The strike of Juror 8 did not violate *Batson* because it was based on the juror's personal beliefs, not her religious affiliation.

■■■■■ ¶ 32   Purcell also argues that the removal of Juror 8 violated Article 2, Section 12 of the Arizona Constitution, which states in pertinent part:

> No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion. . . .

This provision has been interpreted to allow disqualification of a juror whose religious beliefs prevent him or her from being fair and impartial in a given case. *State v. Willoughby,* 181 Ariz. 530, 546, 892 P.2d 1319, 1335 (1995)("Although religious beliefs may motivate one's opinion about the death penalty, the beliefs themselves are not the basis for disqualification."), *cert. denied,* 516 U.S. 1054, 116 S.Ct. 725, 133 L.Ed.2d 677 (1996); *State v. Fisher,* 141 Ariz. 227, 249, 686 P.2d 750, 772, *cert. denied,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). Indeed, the guarantee of an impartial jury in Article 2, Section 24 requires such a result because a juror is not impartial if his or her religious beliefs prohibit a finding that a defendant is guilty despite contrary proof beyond a reasonable doubt. *Fisher,* 141 Ariz. at 249, 686 P.2d at 772. Therefore, just as we determined with respect to *Batson,* Article 2, Section 12 of the Arizona Constitution prevents any peremptory strike based on religious affiliation, but it does not prevent a strike based on a prospective juror's relevant specific opinion, even if religion-based, which prevents the juror from fairly and impartially applying the law in a given case. *See* Michael J. Plati, Note, *Religion-based Peremptory Strikes in Criminal Trials and the Arizona Constitution: Can They Coexist?,* 26 ARIZ.ST.L.J. 883, 895–898 (1995)(stating that, based on *Fisher,* Article 2, Section 12 should prohibit peremptory strikes based on religious-group categorizations but not specific findings of religious partiality). Juror 8 was dismissed because her opinions may have prevented her from impartially applying the

law, not because of her membership in the Catholic Church.[8]

¶ 33 While Juror 8 indicated in her questionnaire that she had such beliefs against the death penalty, Purcell argues that, because she stated during voir dire that her beliefs would not affect her ability to be fair and impartial, the prosecutor could not strike her from the jury. We disagree. Although the assurances Juror 8 provided the trial court were sufficient to withstand a challenge for cause, it does not necessarily follow that they eliminated all legitimate concerns about her impartiality given her prior contradictory statements. *Bolton,* 182 Ariz. at 302, 896 P.2d at 842 (*Batson* does not prevent the use of "peremptory strikes to remove potential jurors who may not be excluded for cause who have expressed reservations about capital punishment."); *see Martin,* 75 Cal.Rptr.2d at 150 ("[T]he justification for a peremptory challenge need not rise to grounds for a challenge for cause."). We find no violation of Article 2, Section 12.

¶ 34 Purcell also argues that both discriminatory and neutral reasons were given for striking Juror 8 and that the nondiscriminatory reasons do not cure the defect of the prosecutor's strike of her based on a protected reason. However, the trial court did not find, as Purcell contends, that the prosecutor offered one improper basis (religion) and one proper basis (employment) which made the strike permissible. Rather, the court found, and the record supports, that Juror 8 was struck because of her expressed opposition to the death penalty, which could have prevented her from finding Purcell guilty of first-degree murder regardless of the evidence. Related to this same concern was potential pressure from her employer, the Catholic Diocese, an institution that had also expressed opposition to the death penalty. These factors combined to form the single basis for the strike: concern

that Juror 8 would not exercise independent judgment and render a fair verdict based on the evidence because of her underlying opposition to capital punishment. Thus, we do not address the situation of a "mixed-motive" case, one in which the prosecutor offers one proper and one improper reason for using a peremptory strike. The court, which considered whether the prosecutor was exercising a strike based on religious membership, found no discriminatory purpose to the prosecutor's strike, and we defer to its exercise of discretion.

### C. Sentence for Misconduct Involving Weapons

¶ 35 Purcell was sentenced to eight years for misconduct involving weapons, which was designated by the trial court as a dangerous offense. He claims, and the State concedes, that the court erred in enhancing his sentence because the State did not allege that the offense was dangerous, and the jury never made the required finding of dangerousness. A.R.S. § 13-604.

¶ 36 The State however urges that, because the trial court clearly intended to give Purcell the maximum sentence for this offense, we should impose a super-aggravated sentence of 3.75 years pursuant to A.R.S. section 13-702.01 rather than remand for resentencing. Although we agree that the court seemingly intended to impose the maximum sentence, we decline to do so. Section 13-702.01(A) requires that the trial court find at least two statutory aggravating factors listed under section 13-702(C) before imposing a super-aggravated sentence. Moreover, Purcell is entitled to be present during sentencing. ARIZ.R.CRIM.P. 26.9. We therefore remand this conviction to the trial court for resentencing.

---

8. In *Fisher,* 141 Ariz. at 249 n. 9, 686 P.2d at 772 n. 9, the court distinguished cases in which Article 2, Section 12 was violated because those cases involved attempts to enhance witness credibility, *Tucker v. Reil,* 51 Ariz. 357, 77 P.2d 203 (1938) (questioning of witness concerning membership in a particular church was improper); *Fernandez v. State,* 16 Ariz. 269, 144 P. 640

(1914)(questions to an aged woman concerning her belief in God or the Great Spirit were improper), or attempts to exculpate a defendant by offering evidence of his religious convictions. *State v. Marvin,* 124 Ariz. 555, 606 P.2d 406 (1980)(court properly excluded testimony concerning defendant's religious beliefs).

## CONCLUSION

¶37 We find that the trial court did not err in denying Purcell's motions to strike two prospective jurors for cause. We also find no abuse of discretion or legal error in the court's conclusions that the prosecutor's peremptory strike of a juror violated neither *Batson* nor Article 2, Section 12 of the Arizona Constitution. We therefore affirm Purcell's convictions and sentences, with the exception that we remand this case for re-sentencing on the conviction for misconduct involving weapons.

CONCURRING: JEFFERSON L. LANKFORD, Judge, ANN A. SCOTT TIMMER, Judge.

