# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-70023

United States Court of Appeals
Fifth Circuit

**FILED**
August 31, 2016

Lyle W. Cayce
Clerk

CHRISTOPHER YOUNG,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Christopher Young awaits execution in a Texas prison. He challenged the constitutionality of his confinement and sentence in federal district court, but the district court rejected his claims. He now seeks a certificate of appealability (COA) in order to contest the district court's ruling. We GRANT the COA in part and DENY it in part.

I

On November 21, 2004, an intoxicated Young forced his way into a woman's apartment, sexually assaulted her in the presence of her children, stole her car, drove it to a convenience store, and tried to rob the store's owner

No. 15-70023

at gunpoint. The owner resisted, and Young shot him to death.[1] In February 2006, Young was convicted of capital murder and sentenced to die. On automatic appeal to the Texas Court of Criminal Appeals (TCCA), he alleged fifteen points of error in the prior proceedings. The appeals court rejected each as meritless,[2] and the U.S. Supreme Court denied his subsequent petition for writ of certiorari.[3]

Young filed a state habeas corpus petition in September 2009. The state trial court held a hearing and issued an order recommending rejection of each of Young's twenty claims for relief.[4] The TCCA adopted the recommendation.[5]

In 2014, Young filed a federal habeas petition in the Western District of Texas. The petition, as later amended,[6] argued (among other things) that the

---

[1] *See Young v. State*, 283 S.W.3d 854, 860-61, 863-65 (Tex. Crim. App. 2009) (per curiam).

[2] *Id.* at 860.

[3] *See* 558 U.S. 1093 (2009). All subsequent references to the "Supreme Court" denote the U.S. Supreme Court.

[4] *See* Findings of Fact & Conclusions of Law, *Ex parte Young*, No. 2005-CR-1183-W1 (187th Dist. Ct., Bexar County, Tex. Nov. 28, 2012) (hereinafter "187th District Court Opinion").

[5] *Ex parte Young*, No. WR-70,513-01, 2013 WL 2446428 (Tex. Crim. App. June 5, 2013) (unpublished).

[6] Young filed an initial petition on March 18, 2014, an amended petition on May 16, and a subsequent petition, which he styled a "first amended petition," on June 27. On appeal, the parties dispute which of these petitions is the operative one and which, if any, were untimely under the district court's scheduling orders and the applicable statute of limitations. However, each of the claims now before us was present either in his March 18 petition, which was undisputedly timely under the court's scheduling orders, or in his May 16 petition, which was untimely under the scheduling orders but timely under the statute of limitations. The district court chose to consider each of the claims on the merits, and did not assert that any of them were barred for failure to comply with the court's scheduling orders. Therefore, we may consider them on appeal. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 58 (1st Cir. 2000) (magistrate judge did not abuse his discretion in entertaining a motion entered after the judge's deadline for dispositive motions); *Edwards v. Cass Cty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990) (The district court has broad discretion in controlling its own docket. This includes the ambit of scheduling orders and the like."); *Yates v. Mobile Cty. Pers. Bd.*, 658 F.2d 298, 300 (5th Cir. Unit B 1981) (per curiam) (a district court effectively allows a litigant leave to amend an earlier pleading when it allows the litigant to present a defense after a court-imposed deadline expires).

state's use of a peremptory strike against venire member Myrtlene Williams during his initial trial was discriminatory, that his trial counsel was ineffective, and that the trial court's jury instructions were constitutionally deficient insofar as they a) did not inform the jury of the potential effect of a single holdout juror and b) did not include all of the elements required by the Texas Code of Criminal Procedure. The district court denied all of Young's claims, denied his request for an evidentiary hearing, and denied a certificate of appealability (COA). Young appealed.

## II

On appeal, Young seeks a COA for four of his federal habeas claims. As we recently explained:

> This court may issue a COA only if the applicant has "made a substantial showing of the denial of a constitutional right." . . . To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[7]

Although a petitioner seeking a COA must demonstrate "'something more than the absence of frivolity' or the existence of mere 'good faith,'"[8] our analysis of a COA application entails only a "limit[ed]," "threshold inquiry," and "[w]here the petitioner faces the death penalty, 'any doubts as to whether a COA should issue must be resolved' in the petitioner's favor."[9]

---

[7] *Allen v. Stephens*, 805 F.3d 617, 624-25 (5th Cir. 2015) (quoting 28 U.S.C. § 2253(c)(2) and *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)); *see Miller-El*, 537 U.S. at 336 ("We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason.").

[8] *Miller-El*, 537 U.S. at 338 (quoting *Barefoot v. Estelle*, 460 U.S. 880, 893 (1983)).

[9] *Id.* at 327; *Allen*, 805 F.3d at 625 (quoting *Medellin v. Dretke*, 371 F.3d 270, 275 (5th Cir. 2004)). *See generally Miller–El*, 537 U.S. at 337-38 ("It is consistent with [AEDPA] that a COA will issue in some instances where there is no certainty of ultimate relief. . . . [and where] every jurist of reason might agree, after the COA has been granted and the case received full consideration, that the petitioner will not prevail.").

No. 15-70023

The federal district court denied Young's habeas petition pursuant to 28 U.S.C. § 2254(d), which provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

We "review pure questions of law under the 'contrary to' standard of sub-section (d)(1), mixed questions of law and fact under the 'unreasonable application' standard of sub-section (d)(1), and pure questions of fact under the 'unreasonable determination of facts' standard of sub-section (d)(2)."[10]

## III

We begin with Young's first issue on appeal, in which he asserts that the state violated the Constitution in striking a potential juror on the purported basis of her work with a prison ministry group. Venire member Myrtlene Williams, an African-American woman, was called for questioning on January 17, 2006, the fifth day of individual voir dire interviews for Young's initial trial.[11] Her initial questionnaire and interview revealed that she was a member of Calvary Baptist Church, and participated in the church's outreach ministry program; that other participants in that program ministered to

---

[10] *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) (quoting *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000)).

[11] 8 R.R. 114.

prisoners, although she had not;[12] and that two of her children had had legal trouble, although she did not know the specifics.[13] The state exercised a peremptory strike, and the defense raised a *Batson* challenge, commenting, "of course we recognize the fact she's a Black female."[14] The state justified its strike on the basis of Williams's involvement with the church outreach group and her daughter's criminal history.[15] The judge denied the *Batson* challenge without explanation and excused Williams.[16]

Young challenged Williams's exclusion in the state and federal district courts. However, the nature of his challenge has changed over time. On direct appeal to the TCCA, Young argued that in striking Williams and two other African-American venirewomen, the state "purposeful[ly] use[d] peremptory strikes in a racially discriminatory manner," violating the federal Constitution and the Texas Code of Criminal Procedure. He labeled the state's explanation that it struck Williams because of her participation in the outreach ministry

---

[12] *See id.* at 116:

Q. And I've had some individuals in the past who have been associated with some things that they called Outreach Ministries, so they've dealt with going to the jails and the prisons and helping them.

A. I have not done that, no.

Q. Do the people in your group do that?

A. Yes some of them do that.

Q. And tell me, what's the purpose that, the people in your group who do that?

A. Well, I guess, trying to get them you know to understand -- I guess to understand about getting closer to God, you know, maybe help them through what they are going through in the jail, I guess.

Q. So, an attempt to try to rehabilitate them while they're incarcerated?

A. Yes.

Q. And that is something that Outreach Ministry does do?

A. Yes. Uh-huh.

[13] *Id.* at 118.

[14] *Id.* at 118, 120; *see Batson v. Kentucky,* 476 U.S. 79 (1986) (forbidding racial discrimination in the use of peremptory challenges).

[15] *Id.* at 118-19.

[16] *Id.* at 120.

program "specious" and "an artifice calculated to keep a black person off of the jury."[17]

In Young's subsequent state habeas petition, he did not mention Williams or *Batson* at all. Then, in his federal habeas petitions, he shifted gears, claiming both (1) that the state's ministry-group explanation was a pretext for racial discrimination and, in the alternative (and for the first time), that (2) the state's ministry-group explanation was *genuine* and evinced unconstitutional religious discrimination.[18] The district court found the latter argument defaulted. We agree.

"[P]rocedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."[19] "'To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts.' It is not enough that the facts applicable to the federal claim were all before the State court . . . . The federal claim must be the 'substantial equivalent' of the claim brought before the State court."[20]

Young's unambiguously and solely race-based *Batson* claim in the state courts was not the "substantial equivalent" of the religion-based claim he presents on appeal. Accordingly, Young's religion-based claim is defaulted, and

---

[17] *Id.* at 46.

[18] This two-pronged argument was present in varying form in each of Young's three petitions filed with the federal district court. Young re-urges both prongs on appeal, but he heavily emphasizes the religion-based argument.

[19] *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997)).

[20] *Riley v. Cockrell*, 339 F.3d 308, 318 (5th Cir. 2003) (citations omitted) (quoting *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001), and *Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999)).

No. 15-70023

a COA is not merited, unless he could still present the claim in state court.[21] To do so, Young would have to file a successive habeas petition. In Texas, such petitions are barred absent certain special circumstances.[22] But Young does not argue that any of these circumstances are present. Thus, his religion-based claim is unmistakably defaulted.[23] In turn, reasonable jurists could not debate

---

[21] Young's default could also be excused on a showing of cause and prejudice or of fundamental miscarriage of justice, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991), but he does not argue either exception applies.

[22] *See Williams v. Thaler*, 602 F.3d 291, 306 (5th Cir. 2010). To summarize, the three circumstances are (1) the factual or legal basis of the successive claim was not previously available; (2) no rational juror could have found the petitioner guilty; and (3) no rational juror could have answered a capital sentencing special issue in the state's favor. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art 11.071 § 5(a)(1)-(3) (Vernon 2007)).

[23] Given this, we need not reach the district court's alternative holding that Young's religion-based claim is barred under the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 306, 310 (1989). *See Blue v. Thaler*, 665 F.3d 647, 670 (5th Cir. 2011) (explaining that under *Teague*, "[n]ew rules of constitutional criminal procedure cannot be announced on federal habeas review," with certain exceptions not applicable here, and that "'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government,' which is to say, when its 'result was not *dictated* by precedent existing at the time the defendant's conviction became final'" (quoting *Teague*, 489 U.S. at 301)). Young correctly notes that by the time his conviction became final in December 2009, the Second Circuit had opined that the Constitution forbids striking jurors on the basis of religion, as had two Justices of the Supreme Court and various state courts. *See Davis v. Minnesota*, 511 U.S. 1115, 114 S. Ct. 2120, 2120-22 (1994) (Thomas, J., joined by Scalia, J., dissenting from the denial of certiorari); *United States v. Brown*, 352 F.3d 654, 669 (2d Cir. 2003); *Highler v. State*, 854 N.E.2d 823, 829-30 (Ind. 2006); *State v. Hodge*, 726 A.2d 531, 552-53 (Conn. 1999); *State v. Purcell*, 18 P.3d 113, 120 (Ariz. Ct. App. 2001), *review denied* (Oct. 3, 2001); *People v. Martin*, 75 Cal. Rptr. 2d 147, 151 (Cal. Ct. App. 1998); *see also United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir.), *modified*, 136 F.3d 1115 (7th Cir. 1998) (suggesting a similar view in dicta); *State v. Fuller,* 862 A.2d 1130, 1140-42 (N.J. 2004) (same). *But see State v. Davis*, 504 N.W.2d 767, 771 (Minn. 1993); *Casarez v. State*, 913 S.W.2d 468, 495 (Tex. Crim. App. 1994). We note in passing that these authorities generally address strikes made on the basis of religious *affiliation*, whereas it is at least arguable that the state's explanation for striking Williams related to her religious *activity* (i.e., her participation in a prison outreach group). Thus, even if these authorities "dictate" a constitutional rule against peremptory strikes motivated by jurors' religious affiliation, they may not be apposite to Young's case. *See Brown*, 352 F.3d at 669 ("Differentiating among prospective jurors on the basis of their activities does not plainly implicate the same unconstitutional proxies as distinctions based solely on religious identity."); *United States v. DeJesus*, 347 F.3d 500, 510 (3d Cir. 2003) (accepting as constitutional peremptory strikes based on "jurors' heightened religious involvement").

the district court's rejection of this claim, nor does it deserve encouragement to proceed further.[24] We deny a COA for Young's first claim.

IV

Second, Young claims that the trial court caused the jurors to misapprehend the proper mechanics of the punishment-phase voting process. Article 37.071 of the Texas Code of Criminal Procedure set forth two special issues for the jury to consider during this process. First, the jury had to consider "whether there [was] a probability that [Young] would commit criminal acts of violence that would constitute a continuing threat to society."[25] The jury could only answer "yes" if every one of its 12 members agreed, and it could only answer "no" if 10 or more members agreed. If the jury answered "no," or could not reach the specified thresholds for a "yes" or "no" answer, Young would be sentenced to life in prison without parole.[26] If it answered "yes," the jury would then have to consider

> [w]hether, taking into consideration all of the evidence, including the circumstances of the offense, [Young's] character and background, and [Young's] personal moral culpability . . . there [was] a sufficient mitigating circumstance or circumstances to

---

[24] In his COA application and in filings in the district court, Young appears to briefly argue in the alternative that the state's religion-based justifications were merely pretextual, and that Williams was really struck because of her race. Young's presentation of this alternative claim was sufficiently fleeting that the district court did not notice he was making it, and his discussions of race discrimination in this court have been cryptic at best. To the extent Young has articulated a solely race-based *Batson* claim, it is waived due to inadequate argument. *See United States v. Brace*, 145 F.3d 247, 255 (5th Cir. 1998) (en banc) ("[W]e review only those issues presented to us; we do not craft new issues or otherwise search for them in the record."); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

[25] TEX. CODE CRIM. PROC. ANN. art 37.071 § 2(b)(1) (West). Another issue under § 2(b) was not relevant in Young's case, and the jury did not consider it. *See id.* § 2(b)(2) (addressing guilt as a party); 18 R.R. 68-70.

[26] *Id.* § 2(d)(2), (g).

warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed.[27]

The jury could only answer "no" if every member agreed, and it could only answer "yes" if 10 or more members agreed.[28] If the jury answered "yes," or could not reach the specified thresholds for a "yes" or "no" answer, Young would be sentenced to life in prison without parole.[29] If the jury answered "no," Young would be sentenced to death.[30]

The trial judge instructed the jury on the special issues, the voting thresholds (which are collectively known as "the 12/10 rule"),[31] and the consequences of "yes" and "no" answers.[32] However, he did not tell the jury that if it could not reach a specified voting threshold for one or both of the issues – that is, if more than zero but less than 10 jurors voted "no" as to Young's future dangerousness or "yes" as to the presence of sufficient mitigating evidence – then Young would receive a life sentence.[33] Article 37.071 did not require such an instruction. Nevertheless, Young argues that the jury charge was misleading without one and that he was entitled to one under the Supreme Court's decision in *Simmons v. South Carolina*.[34] He offers affidavits from four jurors in which each claimed to have erroneously believed that he or she could not compel a life sentence on his or her own.

---

[27] *Id.* § 2(e)(1).

[28] *Id.* § 2(f)(2).

[29] *Id.* § 2(g).

[30] *Id.*

[31] *See, e.g., Reed v. Stephens*, 739 F.3d 753, 779 & n.17 (5th Cir.), *cert. denied*, 135 S. Ct. 435 (2014).

[32] 18 R.R. 68-70.

[33] TEX. CODE CRIM. PROC. ANN. art 37.071 § 2(g) (West).

[34] 512 U.S. 154 (1994).

No. 15-70023

The district court correctly found this claim defaulted. Young did not raise his *Simmons* claim or anything like it on direct appeal to the Texas Court of Criminal Appeals.[35] Because of this, the claim is barred.[36]

The district court further examined Young's claim on the merits and found it wanting, holding that "[t]here is simply no 'clearly established' federal law, as enunciated by the United States Supreme Court, holding the Fourteenth Amendment's Due Process Clause requires capital sentencing juries at the time of [Young's] capital murder trial to be informed of the impact of a single holdout juror on any of the Texas capital sentencing special issues." Again, this is correct. In *Jones v. United States*, the Supreme Court disavowed the notion that "the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process."[37] Consistent with this view, we have repeatedly rejected arguments similar to Young's at the COA stage.[38] The only apparently novel element of his version of the argument

---

[35] It is also uncertain whether Young adequately raised the claim in his subsequent state habeas petition. The federal district court noted that while Young had presented a somewhat similar argument in that petition, that argument did not invoke *Simmons*, so Young "did not fairly present the state habeas court with the same legal arguments he has presented to this Court." *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) ("[W]here petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." (quoting *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983))). But even if Young "fairly presented" his claim for state habeas review, he did not present it on direct appeal, so it is defaulted.

[36] *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007) ("The Texas Court of Criminal Appeals has held that record based claims not raised on direct appeal will not be considered in habeas proceedings. . . . This procedural rule [is] firmly established . . . [and] sets forth an adequate state ground capable of barring federal habeas review." (citations omitted)). Young's default could be excused on a showing of cause and prejudice or of fundamental miscarriage of justice, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991), but he does not argue either exception applies, and because Young's *Simmons* argument is meritless (as explained below), there is no prejudice.

[37] 527 U.S. 373, 382 (1999).

[38] *See, e.g.*, *Reed v. Stephens*, 739 F.3d 753, 779 (5th Cir.), *cert. denied*, 135 S. Ct. 435 (2014), and cases cited therein; *Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005); *Alexander*

10

is the citation to *Simmons*. However, the Supreme Court has never suggested that *Simmons* requires informing jurors of the consequences of a breakdown in deliberations. Rather, *Simmons* held that if state law does not allow parole from a life sentence, a capital defendant is entitled to have the jury notified of that fact.[39] Nothing in the Supreme Court's or our subsequent interpretation of *Simmons* indicates that that decision qualifies *Jones* or is otherwise relevant to jury instructions concerning voting thresholds, nor does Young cite authority to that effect. *Simmons* is irrelevant, and Young's argument fails on the merits.

In his appeal brief, Young does not contest the district court's analysis of *Simmons*, but instead attacks that court's decision to exclude the juror affidavits. "Under Rule 606(b) of the Federal Rules of Evidence, jurors' affidavits are inadmissible 'regarding . . . [among other things] the effect of any particular thing upon an outcome in the deliberations . . . and . . . the testifying juror's own mental process during the deliberations.'"[40] Young argues that Rule 606(b) does not exclude the affidavits because his habeas challenge implicates "the legality of his confinement and state court judgment," whereas the rule applies only "upon an inquiry into the validity of either the verdict or indictment."[41] At bottom, however, Young's habeas claim relies on the notion that the jury's penalty phase *verdict* was invalid because the jurors were misled by faulty instructions.[42] The affidavits are meant to show as much, so

---

v. *Johnson*, 211 F.3d 895, 897 & n.5 (5th Cir. 2000) (per curiam) (addressing the Eighth and Fourteenth Amendments).

[39] 512 U.S. 154, 169, 171 (1994).

[40] *Summers v. Dretke*, 431 F.3d 861, 873 (5th Cir. 2005) (quoting *Pyles v. Johnson*, 136 F.3d 986, 991 (5th Cir. 1998)).

[41] FED. R. EVID. 606(b); Young's Brief at 25-26.

[42] *See Jones v. United States*, 527 U.S. 373, 381-82 (1999) ("[A] jury cannot be 'affirmatively misled regarding its role in the sentencing process.'") (quoting *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994)).

No. 15-70023

Rule 606(b) applies to them.[43] In any event, we have repeatedly held that Rule 606(b) forbids consideration of juror affidavits in federal habeas cases.[44] And the claim the affidavits support is both defaulted and meritless. We deny a COA for Young's second issue.

V

Third, Young claims the trial court violated his constitutional rights by omitting a statutorily required jury instruction. Article 37.071 § 2(f)(3) requires a trial judge to "charge the jury that [it] need not agree on what particular evidence" constituted mitigating evidence sufficient to justify a life sentence.[45] Young's trial judge failed to do so.[46] Young did not object to the incomplete jury charge,[47] but on direct appeal, he claimed the omission amounted to a denial of his Eighth and Fourteenth Amendment rights, because it "impermissibly limited the jurors' ability not only to consider, but to give unilateral effect to the mitigation evidence before them, and therefore violated the same principle as the instructions held to be unconstitutional in *Mills [v. Maryland]*."[48] The TCCA disagreed, reasoning that

> even when presented with the circumstances in *Mills*, the Supreme Court did not go so far as to say it is a constitutional requirement that every jury deliberating punishment in a capital case should be explicitly instructed that the jurors need not agree on the particular mitigating circumstances. . . . [The jurors] unanimously found that no sufficient mitigating circumstance or

---

[43] For the same reason, the affidavits are inadmissible to support Young's other issues on appeal.

[44] *See Summers*, 431 F.3d at 873 (in a capital habeas appeal, refusing to consider a juror affidavit alleging that certain purportedly false testimony was "the most influential testimony from the penalty phase" (quotation omitted)); *United States v. Jones*, 132 F.3d 232, 245-56 (5th Cir. 1998), *aff'd*, 527 U.S. 373 (1999).

[45] TEX. CODE CRIM. PROC. ANN. art 37.071 § 2(f) (West).

[46] This was indisputably error, as the TCCA recognized. *See Young v. State*, 283 S.W.3d 854, 879 (Tex. Crim. App. 2009) (per curiam); *id.* at 886 (Price, J., dissenting).

[47] At Young's state habeas hearing, his trial counsel testified that the failure to object was inadvertent and not a strategic choice. State Habeas Hearing Transcript at 16-17.

[48] TCCA Brief at 108 (referring to *Mills v. Maryland*, 486 U.S. 367 (1988)).

No. 15-70023

circumstances warranted that a life sentence be imposed. . . . [Therefore,] there was no possibility that the jurors would be confused about a need to agree on a particular circumstance or circumstances. Although the trial court erred in failing to give the statutory instruction, in this case, the appellant was not deprived of the constitutional guarantee of a unanimous verdict . . . . [n]or was the appellant denied a fair trial.[49]

Judge Price dissented, arguing that even though the jury's mitigating-circumstances finding was unanimous, the jurors could still have reasonably construed their instructions, taken as a whole, to allow a particular circumstance to be taken into account only if every juror agreed it existed and was sufficient.[50]

Young re-raised this claim in his state habeas petition. The state district court recommended denying it, and the TCCA summarily adopted the state district court's recommendation.[51] Young raised the claim again in his original and amended federal habeas petitions, to no avail.[52] He now offers it again on appeal. We have reviewed the Supreme Court's relevant decisions and the discussions of this claim in the state and federal district courts, including Judge Price's firm dissent. We find that the claim is adequate to deserve encouragement to proceed further. Accordingly, we grant a COA for Young's *Mills* claim.

VI

Fourth, and finally, Young claims that his counsel was ineffective in failing to object to the trial court's incomplete jury instructions. Having found

---

[49] *Young*, 283 S.W.3d at 879.

[50] *Id.* at 886-89 (Price, J., dissenting).

[51] *Ex parte Young*, No. WR-70,513-01, 2013 WL 2446428 (Tex. Crim. App. June 5, 2013) (unpublished); 187th District Court Opinion at 7-19.

[52] Young again sought to introduce juror affidavits to demonstrate that the jurors had been confused by the instructions given. Those affidavits are inadmissible under Rule 606(b), as explained above.

that the trial court's incomplete instruction could not have misled the jury, the state and federal district courts concluded that even if counsel's failure to object amounted to deficient performance, Young was not prejudiced.[53] However, given our grant of a COA as to the harm Young suffered from the faulty instruction, the issue of prejudice is adequate to deserve encouragement to proceed further. Nor do we find strong evidence in the record before us that Young's counsel's performance was not deficient (thus foreclosing Young's claim regardless of prejudice).[54] Accordingly, we grant a COA for Young's fourth issue.

## CONCLUSION

We GRANT a COA for Young's third issue, relating to the incomplete jury instructions, and his fourth issue, relating to his counsel's purportedly ineffective assistance. We DENY a COA for Young's first and second issues.

---

[53] 187th District Court Opinion at 9-10.

[54] The record is sparse on this point. It is undisputed that the omission of the § 2(f)(3) instruction was in error, and at Young's state habeas hearing, his trial counsel admitted that the omission was significant and that he did not notice it at the time. *See* 187th District Court Opinion at 13-14. Nevertheless, neither side has briefed the "performance" prong of *Strickland* in any detail and no court has addressed it.