NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MANUEL BUSTILLOS, *Appellant*.

No. 1 CA-CR 16-0187
FILED 7-6-2017

Appeal from the Superior Court in Maricopa County
No.  CR2013-431584-001
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## MEMORANDUM DECISION

Chief Judge Michael J. Brown delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco[1] joined.

**B R O W N**,  Chief Judge:

¶1         Manuel Bustillos appeals his convictions and sentences for several offenses relating to molestation, sexual conduct with a minor, and public indecency for acts relating to his minor daughter.  For the following reasons, we affirm.

## BACKGROUND

¶2         Bustillos began sexually abusing D.B., his oldest daughter, when she was about 10 years old.  On one such occasion, Bustillos took D.B. alone into a bedroom and placed his mouth on her vagina.  The sexual contact was interrupted when D.B.'s brother briefly opened the door.  After each occurrence of abuse, Bustillos told D.B. to not tell anyone because she would be in trouble.  On at least one occasion, D.B. also noticed Bustillos looking at her through her bedroom window.

¶3         In the summer of 2013 (when D.B. was 15 years old), after she had learned about sexual assault through a school program and noticed that Bustillos began to look at and treat her younger sister, N.B., the same way he treated her, D.B. called the police.  When the police arrived, they interviewed D.B. and N.B., as well as their brother and mother.  Police also interviewed Bustillos, who denied having sexual intercourse with D.B., but admitted that he touched her breasts once and her vagina twice when she was 13 years old.  Relating to misconduct with D.B., the State charged Bustillos with four counts of sexual conduct with a minor, one count of molestation of a child, and one count of public sexual indecency.  Regarding N.B., the State charged Bustillos with one count of molestation of a child.

¶4         Approximately one week before trial, the State moved to admit evidence of other acts under Arizona Rule of Evidence ("Rule")

---

[1]     The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

404(b) and (c). The State sought to admit evidence of a police interview of Bustillos's son received the day before, in which the son alleged that more than five years earlier, he walked into his parents' room to find D.B. alone with Bustillos, who was bent down, pulling the elastic band of the front of her shorts outward, and "looking down" in her shorts. Bustillos's son described what he saw, including the shorts D.B. was wearing, where the two were standing in relation to the bedroom door, and that Bustillos looked up at him when he opened the door.

¶5        The son also stated that he saw Bustillos look through D.B.'s bathroom window while she showered "plenty of times" and that he saw Bustillos looking through D.B.'s bedroom window many times as well. He knew D.B. was in the bathroom when Bustillos watched through the window because the son would go inside and knock on the door to see who was in there. The son explained that Bustillos would do this by standing on a brick outside the windows. The son denied having seen Bustillos do anything to his other sister, though. When asked by the interviewing detectives why he was only now disclosing this information, the son responded that he was tired of holding it in.

¶6        This evidence, the State argued, showed Bustillos's aberrant sexual propensity. The State argued that the evidence was admissible under Rule 404(c) because the other acts had an evidentiary value that outweighed the danger of unfair prejudice, they occurred in the proximate time of the charged offenses, and were similar to the charged offenses. The State also argued that the other acts evidence was admissible under Rule 404(b) as evidence of absence of mistake or accident.

¶7        In response, Bustillos requested to interview his son, as well as his wife and daughter, N.B., to corroborate the reliability of the son's allegations. He also requested an evidentiary hearing to determine the reliability of the three witnesses. Bustillos argued that the nature of the interview was not one that implicated victim's rights protections, but instead was for an evidentiary hearing to determine the credibility and reliability of the proffered evidence. Because evidence cannot be introduced under Rule 404 unless clear and convincing, Bustillos argued, he had a right to subpoena witnesses who do not have the right to refuse, and that not being permitted to conduct those interviews would prejudice him.

¶8        The State objected, arguing that as victims (or the victims' guardian), neither Bustillo's wife nor N.B. had to consent to an interview, and that Bustillos's request was an attempt to obtain information irrelevant

to the Rule 404 motion and in violation of victims' rights laws. The State also argued that only it carried the burden of proof to prevail on its motion, not the defendant. Because the State believed the son's interview to be "self-explanatory," it intended to introduce only the interview and previously admitted evidence for the court's consideration. Therefore, the State explained, it did not intend to call any witnesses to testify regarding the motion, so Bustillos had no right to call witnesses. The State agreed, however, to make the son available for an interview if needed.

¶9        Initially, the court agreed that while the witnesses could refuse an interview with Bustillos relating to the Rule 404 hearing, Bustillos could subpoena them and call them as witnesses. Nevertheless, the trial court instructed that if Bustillos interviewed his son and afterward felt that he needed additional information, he could make the request again. The court did not make a ruling on the motion at that time, however, accepting the State's request that it first read *State v. LeBrun*, 222 Ariz. 183 (App. 2009), for the proposition that neither live testimony or an evidentiary hearing is required.

¶10        After taking the matter under advisement, the trial court denied Bustillos's request for interviews of his wife and N.B. and an evidentiary hearing. The court ruled that Rule 404 required the State to present sufficient evidence "from which the court could determine that a jury would be able to make a finding of clear and convincing evidence that the alleged incidents occurred." Because of the nature of the State's burden, the court concluded that "this is not an opportunity for the defense to cross-examine the State's evidence or to present contrary evidence. I simply need to make the threshold finding . . . ." Bustillos, however, did interview his son for purposes of the Rule 404 motion.

¶11        At the subsequent oral argument on the motion during the first day of trial, the State argued that each of the three necessary elements under Rule 404(c) were met. Bustillos argued that the proffered evidence was not reliable because the son had previously denied any allegation that Bustillos had done anything wrong, and only now, after living with his mother, D.B., and N.B., felt pressured to state otherwise. Bustillos also argued that his son's statement that he walked in on Bustillos pulling D.B.'s pants outward was inconsistent with D.B.'s recounting of the incident. The trial court noted it intended to rule on the motion the next morning, and in the meantime the court would listen to the interview recordings of the son's interview with the police detectives as well as defense counsel's interview of the son.

¶12 Before trial the next day, the court explained that although it had listened to the son's interview with the detectives and read transcripts of Bustillos's, N.B.'s, and D.B.'s interviews, it had not yet had the opportunity to finish listening to the son's interview conducted by defense counsel. Without objection from either party, the court started the trial and heard testimony from D.B. After she testified, the court determined that the other acts were admissible under Rule 404(c), explaining as follows: (1) based on the son's statements, "clear and convincing evidence from which the jury could determine that each of these acts were committed" existed; (2) each of the acts "indicate an [aberrant] sexual propensity;" and (3) admission of the other acts evidence would not be unduly prejudicial because they were contemporaneous and involved the same victim. Additionally, the court considered that Bustillos had admitted to committing several sexual acts against the victim. The trial court also found that the statements were admissible under Rule 404(b) to prove motive, intent, and lack of mistake.

¶13 After a 16-day trial, the jury convicted Bustillos of each charged offense and found that each count of sexual conduct with a minor occurred when D.B. was under 15 years old.[2] The trial court then sentenced Bustillos to the presumptive terms for each conviction. Bustillos timely appealed.

## DISCUSSION

### A. Admission of Other Acts Evidence

¶14 Bustillos first argues that the trial court applied the incorrect standard of proof in determining whether to admit the son's interview under Rule 404(b) and (c). He also argues that because of this error, the trial court denied him a fair hearing by denying his request to interview his wife and N.B. and to otherwise present evidence at an evidentiary hearing regarding the admissibility of his son's statements. We review de novo the trial court's interpretation of the rules of evidence. *State v. Steinle*, 239 Ariz. 415, 417 ¶ 6 (2016). We also review constitutional questions de novo. *State v. Harrod*, 218 Ariz. 268, 279 ¶ 38 (2008). Because the trial court applied the incorrect standard to admit Bustillos's son's statements under Rule 404(c), the court erred.

---

[2] The count involving N.B. was severed from the counts involving D.B. At sentencing, the court dismissed that count without prejudice.

**¶15** Generally, "evidence of other bad acts is not admissible to show a defendant's bad character." *State v. Aguilar*, 209 Ariz. 40, 42 ¶ 9 (2004). However, Rule 404(b) allows evidence of other crimes to be admissible if offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b). Similarly, in cases where the defendant is charged with a sexual offense, Rule 404(c) permits evidence of other bad acts to be admissible if the evidence is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c).

**¶16** Before admitting evidence under either Rule 404(b) or (c), the trial court must make specific findings. First, the court must find by clear and convincing evidence that the defendant committed the other act. *State v. Goudeau*, 239 Ariz. 421, 444 ¶ 59 (2016). Second, the court must find that the "commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense." *Id.* Third, the court must find that the evidentiary value of proof of the other act is not substantially outweighed by the danger of unfair prejudice, confusion, or other factors considered in Rule 403. *Id.* In making its final determination, the trial court must also consider the listed factors in Rule 404(c)(1)(C)(i)–(viii). *Id.*

**¶17** Here, the trial court made the latter two findings on the record. The court found that each of the acts described in Bustillos's son's interview—namely peering through the bedroom and bathroom windows and seeing Bustillos "look down" D.B.'s shorts—indicated an aberrant sexual propensity. The court also found that admitting the interview did not present a danger of unfair prejudice because the acts occurred contemporaneously with the charged offenses and involved the same victim.

**¶18** Regarding the first finding required under Rule 404(c), however, the trial court incorrectly stated that it had to find that the State presented clear and convincing evidence "from which the jury could determine that each of these acts were committed." Arizona's rule of evidence and the case law interpreting it requires that the court itself find that the State presented "clear and convincing evidence that the defendant committed the other act" as a prerequisite for admission at trial. *Goudeau*, 239 Ariz. at 444 ¶ 59; *see also State v. James*, 1 CA-CR 2015-0447, 2017 WL 1174319, at *4 ¶ 17 (Ariz. App. Mar. 29, 2017). The court failed to make that express finding here. This error may be harmless, though, if the record contains substantial evidence that the requirements of admissibility were

met. *Aguilar*, 209 Ariz. at 50 ¶ 37. In determining whether the error was harmless, we may consider the entire trial record. *State v. Vega*, 228 Ariz. 24, 29 ¶ 18 (App. 2011). Error is harmless if the guilty verdict rendered was surely not attributable to the error, and the State bears the burden of showing the error was harmless. *Id.* at ¶ 14.

**¶19** The record supports the necessary finding that clear and convincing evidence established that Bustillos committed the other acts described in the son's statements to the detectives. The son described in detail the one instance that he walked into a bedroom and saw Bustillos alone with D.B., holding her shorts out, and "looking down" them. The son explained what his sister was wearing, how Bustillos was bent over next to her, where they were in relation to the door, and that Bustillos looked up at him when he opened the door. The son also provided a time frame for the incident that was consistent with the years that Bustillos was alleged to have committed the crimes against D.B. Similarly, Bustillos's son described that he saw Bustillos multiple times peering through the bathroom window while D.B. was in the shower as well as looking through her bedroom window. He stated that he knew D.B. was in the shower during those times because he would knock on the bathroom door to hear who would respond. These first-hand accounts of what he saw are sufficient to satisfy Rule 404(c)'s clear and convincing requirement. *Cf. Vega*, 228 Ariz. at 29 n.4 ¶ 19 (noting that a victim's testimony is a sufficient basis on which to conclude by clear and convincing evidence that the incident occurred).

**¶20** Bustillos argues that the trial court's misunderstanding of the proper burden under Rule 404(c) led the court to deny him the opportunity to present his own evidence at an evidentiary hearing. He posits that by not being allowed to interview his wife and N.B., he could not challenge the State's evidence or the witnesses' credibility by subpoenaing and calling them to testify. But the trial court's error in not making the first specific finding under Rule 404(c) did not cause the prejudice that Bustillos identifies because the court is not required to hold an evidentiary hearing to determine a witness's credibility.

**¶21** Neither Rule 404(b) nor (c) expressly require that the trial court hold an evidentiary hearing before making its findings regarding the admissibility of other acts evidence. *See* Ariz. R. Evid. 404(b), (c). Instead, the circumstances of the case and the proffered evidence dictate whether an evidentiary hearing, including the ability to call witnesses to the stand to determine their credibility, is needed. *See LeBrun*, 222 Ariz. at 187 ¶ 13. A defendant is entitled to such an evidentiary hearing and opportunity to call witnesses when the record shows a dispute of material fact that would

necessitate the presentation of additional evidence. *James*, 2017 WL 1174319, at *5 ¶ 23. This determination is for the trial court to make, and is not required solely because a defendant requests one, "or because confrontation and cross-examination are the best tools for developing facts, exposing inconsistencies, and determining witness credibility." *Id.* at ¶ 24.

**¶22** As stated above, the interview that the trial court reviewed sufficiently supported the trial court's ruling of admissibility because it satisfied Rule 404(c)'s requirement of clear and convincing evidence that Bustillos committed the alleged acts. The trial court listened to the recorded interview, from which it heard the son's first-hand account of what he observed. *Id.* at ¶ 22 (stating that a recording of an interview captures the witness's demeanor and features of speech like pitch, intonation, and pauses, that can help the court determine credibility). The court also considered that Bustillos himself admitted to committing some sexual misconduct with D.B. Thus, the record before the court at the time it made its ruling did not raise a question of witness credibility related to the other acts or a dispute of material fact requiring an evidentiary hearing, even if Bustillos called the son's reliability into question. *See id.* at ¶ 23 (finding that the defendant's claims that the witness's testimony was not reliable because she initially denied the defendant's wrongdoing and refused to participate in the investigation did not call her claims into question for purposes of Rule 404(c)). Had the court made the appropriate express finding, this record would be more than sufficient to support it. The court's decision to admit the evidence implies that it believed the reports, and the technical error in the language of its ruling does not require reversal. *See* Ariz. Const. art. VI, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done.").

**¶23** Citing *Aguilar*, Bustillos counters that credibility determinations cannot occur when the court neither hears from the victims or is presented with their testimony. However, Bustillos's reliance on this case is misplaced. In *Aguilar*, the State moved to admit evidence of other sexual assaults against other adult victims, which the defendant admitted had occurred but maintained they were consensual. 209 Ariz. at 41 ¶¶ 3–4. This evidence, though, was limited only to grand jury transcripts, pleadings, and oral argument—not any testimony from the victims alleging these acts from which the court could determine credibility. *Id.* at 49–50 ¶ 33. Here, Bustillos's son—not his victims—was the one reporting the other acts. The court had sufficient information from which it could properly determine the reliability of the son's recent disclosure about Bustillos's conduct. Thus, testimony from the son, N.B., and their mother was not

required to be able to determine whether the son's disclosure could be offered as evidence at trial under Rule 404. The court did not err by denying Bustillos's request to interview N.B. and her mother or hold an evidentiary hearing at which he could examine them.

## B.     Denial of Request to Remove Juror 8

¶24     Roughly two weeks into trial, a juror reported to the bailiff that Juror 8 had violated the trial court's instructions by speaking about the case outside of the courtroom. The reporting juror then explained to the court that Juror 8 had made comments expressing her opinions on witnesses and their credibility on three occasions, including once on the juror bus. The court interviewed each of the other jurors, asking whether they had spoken or overheard anyone speak about the case. Each juror, including Juror 8, denied having done or heard so. Juror 8 also stated that she was keeping an open mind and not making any decisions about the case yet. Nevertheless, based on the reporting juror's specific and detailed account of what was allegedly said, Bustillos asked the court to remove Juror 8 for cause. The State disagreed that the facts supported a removal for cause because Juror 8 expressly denied having made any comments and no other juror reported having heard any other juror talk about the case. The court agreed that it did not have a sufficient basis to remove the juror and denied Bustillos's request.

¶25     Bustillos argues that the trial court erred by not removing Juror 8 for cause. We review the trial court's findings regarding a juror's ability to be fair and impartial for an abuse of discretion. *State v. Cota*, 229 Ariz. 136, 147 ¶ 40 (2012). In assessing a juror's fairness and impartiality, the trial court is in the best position to observe the juror and judge the juror's credibility. *State v. Hoskins*, 199 Ariz. 127, 139 ¶ 37 (2000). The party challenging a juror carries the burden of establishing that the juror could not be fair and impartial. *State v. Trostle*, 191 Ariz. 4, 13 (1997).

¶26     The trial court must remove a juror for cause "when there is reasonable ground to believe that [the] juror cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). When the court becomes aware of possible juror misconduct, it should investigate as it deems warranted. *Cota*, 229 Ariz. at 150 ¶ 74. The court need not remove a juror for cause if the juror ultimately assures the court that he or she can be fair and impartial, despite having expressed serious misgivings about the ability to be unbiased. *State v. Purcell*, 199 Ariz. 319, 323 ¶ 8 (App. 2001).

¶27        The trial court did not abuse its discretion by declining to remove Juror 8. When asked by the court, Juror 8 denied having spoken about the case with any other juror, even when specifically confronted with the allegations made by the other juror. And, contrary to Bustillos's argument, Juror 8's failure to admit to any misconduct was not the only factor the court took into consideration. The court discussed the situation with the other jurors individually to inquire whether they had spoken to anyone about the case or heard anyone, including other jurors, talk about the case outside of the courtroom. Each of the jurors responded that they had not heard any jurors speaking about the case. Each juror also relayed that they had not formed any opinions about the case, were keeping an open mind, and remained fair and impartial. Juror 8 also stated that she had not formed any opinions about the case, was keeping an open mind, and assured the court that she remained fair and impartial. Because no one else stated that they heard any other jurors make inappropriate comments, even on the juror bus, and each juror assured the court of his or her impartiality, the court acted within its discretion by denying the motion to remove Juror 8. *See Hoskins*, 199 Ariz. at 141 ¶ 48 ("Prejudice will not be presumed but must appear affirmatively from the record.").

## C.        Mitigating Circumstances

¶28        At sentencing, the State recommended that Bustillos be sentenced to the presumptive term for each conviction, noting that no aggravating factors had been presented to a jury. The State further argued that no mitigating factors warranting sentences lower than the presumptive existed because Bustillos knew what he was doing and nothing excused his actions. Bustillos countered that "overwhelming mitigation" existed and should have been considered to reduce his sentences. Among those factors were Bustillos's age, the "chaotic, dysfunctional environment" he grew up in, lack of formal education, lower mental and emotional function, cognitive deficits, and absence of felonies. The trial court then explained that it had considered the mitigating factors Bustillos outlined, but believed that "none of those factors provide any explanation or excuse for [D.B.'s] testimony about what you did to her."

¶29        Bustillos argues that the trial court "improperly refused to consider mitigation" when the court suggested there was no causal nexus between mitigating circumstances and the offenses he committed. Because Bustillos did not raise this argument in the trial court, we review for fundamental error only. *See State v. Carlson*, 237 Ariz. 381, 400 ¶ 78 (2015) (noting that because the defendant failed to object at trial to the imposition of consecutive sentences, his claim that such sentences were illegal would

be reviewed for fundamental error); *but see State v. Vermuele*, 226 Ariz. 399, 402 ¶ 9 (App. 2011) ("Because a defendant cannot forfeit an opportunity that the defendant does not have, her failure to challenge the sentence at the sentencing hearing cannot be fairly characterized as a forfeiture or waiver.").[3]  To prevail under this standard of review, Bustillos must establish that fundamental error exists and that the error caused him prejudice.  *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20 (2005).  Because the court properly considered the mitigating factors but nevertheless found that they did not warrant a more lenient sentence, we find no error.

¶30        When imposing a sentence for felony offenses, the trial court must consider certain enumerated mitigating circumstances and whether those circumstances are "sufficiently substantial to justify" a lesser sentence.  A.R.S. § 13–701(E), (F).  Unless the trial court finds that mitigating circumstances (or aggravating circumstances) are sufficient to conclude otherwise, the court must impose the presumptive sentence.  *State v. Ovind*, 186 Ariz. 475, 478 (App. 1996).  A causal nexus between the crime and the mitigating factors is not required for the court to consider them in lessening a sentence, but the lack of such nexus can be used to lessen the effect of the mitigation.  *State v. Armstrong*, 218 Ariz. 451, 465 ¶ 74 (2008).

¶31        The record here does not support Bustillos's suggestion that the trial court improperly required him to establish a causal nexus for the mitigating circumstances he urged the court to consider.  Instead, the court declined to deviate from presumptive sentences because it implicitly concluded that the mitigating factors were not sufficiently compelling to warrant lighter sentences.  The court explained that it considered Bustillos's age, rough upbringing, and cognitive deficits, but believed that none of these explained or justified the repeated acts that D.B. described in her testimony, which the court found credible.  Bustillos was not entitled to a mitigated sentence merely because he presented mitigating factors, as a trial court may impose the presumptive sentence even if it finds mitigating factors exist but no aggravating factors.  *State v. Olmstead*, 213 Ariz. 534, 535 ¶ 5 (App. 2006) ("[E]ven when only mitigating factors are found, the presumptive term remains the presumptive term unless the court, in its discretion, determines that the amount and nature of the mitigating circumstances justifies a lesser term.").  Thus, the court did not err, much

---

[3]        Whether Bustillos was required to object at sentencing to preserve this issue for appeal could be subject to the analysis in *Vermuele*, 226 Ariz. at 399 ¶ 6.  However, because we find no error, fundamental or otherwise, we need not decide whether Bustillos forfeited his rights as contemplated in *Henderson* or whether *Vermuele* applies.

less fundamentally, when it declined to deviate from imposing presumptive sentences based on the mitigating factors it considered.

## CONCLUSION

**¶32** For the foregoing reasons, we affirm Bustillos's convictions and sentences.

-

